ACCEPTED
13-15-00344-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/29/2016 7:01:58 PM
Dorian E. Ramirez
CLERK

# No. 13-15-00344-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/29/2016 7:01:58 PM
DORIAN E. RAMIREZ
Clerk

## In the Thirteenth Court of Appeals
## Corpus Christi–Edinburg, Texas

**MARCO A. DELGADO, ET. AL.**
*Appellants*

v.

**JUAN LINO GARZA, SR., ET. AL.,**
*Appellees*

APPEAL FROM CAUSE NO. C-2647-05-B
93RD JUDICIAL DISTRICT COURT, HIDALGO COUNTY, TEXAS
HON. RODOLFO DELGADO, PRESIDING

## APPELLEES' BRIEF

Brandy Wingate Voss
State Bar No. 24037046
Allegra Hill
State Bar No. 24075965
LAW OFFICES OF BRANDY WINGATE VOSS, PLLC
820 E. Hackberry Ave.
McAllen, Texas 78501
(956) 688-9033
(956) 331-2230 (fax)
brandy@brandyvosslaw.com
allegra@brandyvosslaw.com

*Counsel for Appellees*

**ORAL ARGUMENT NOT REQUESTED**

# SUPPLEMENTAL IDENTITY OF PARTIES AND COUNSEL

**Appellees**:

Juan Lino Garza, Sr.
Juan Lino Garza, Jr., as trustee of the
Juan Lino Garza Trust
Juan Lino Garza, Jr. and Elma Irene
Garza, as co-trustees of the Juan Lino
Garza Energy Trust A-1 and A-2

**Appellate Counsel for Appellees:**

Brandy Wingate Voss
Allegra Hill
Law Offices of Brandy Wingate Voss,
PLLC
820 E. Hackberry Ave.
McAllen, Texas 78501
brandy@brandyvosslaw.com
allegra@brandyvosslaw.com

# TABLE OF CONTENTS

Supplemental Identity of Parties and Counsel .......................................................... i

Index of Authorities ............................................................................................... vi

Guide to Citations .................................................................................................. 1

Statement of the Case ............................................................................................. 1

Statement Regarding Oral Argument ..................................................................... 2

Issues Presented (Restated) .................................................................................... 2

    1.      Did the trial court properly award damages for Appellants' trespass on the Garzas' property? Must this Court affirm the award of damages since Appellants attack only one of four independent causes of action supporting the judgment?

    2.      Can Appellants take advantage of a now-cured misnomer in the pleadings, even though Appellants actively participated in the litigation for nearly a decade without raising the issue and were not confused, disadvantaged, or even impacted by the misnomer?

    3.      Can Appellants avoid liability by refusing to acknowledge the existence of an assignment providing Juan Lino Garza, Sr. with standing to bring suit regarding the 108 acres at issue?

    4.      Did the trial court properly deny Appellants' plea in abatement?

          a.      Have Appellants provided a sufficient record to permit review of the trial court's denial of Appellants' Plea in Abatement—a Plea on which Appellants had the burden of proof—despite Appellants' failure to provide a transcript of the hearing on their Plea?

          b.      Did the trial court properly deny Appellants' Plea in Abatement by focusing on pragmatism in applying

Texas Rule of Civil Procedure 39, as directed by the Texas Supreme Court, and fully resolving the issues before the court?

c. Did the trial court properly deny Appellants' Plea in Abatement when Appellants had the burden to show that the relevant parties were indispensable, but failed to establish or even address the factors in Texas Rule of Civil Procedure 39(b)?

5. Did the trial court obtain jurisdiction over the deceased defendants' estates and trust through their participation in the trial and appeal?

6. Did Appellants waive their challenge to the reliability of the foundational data underlying Richard Cortez's expert testimony by failing to request a *Daubert* hearing, failing to object at trial, and agreeing to the admission of the documents on which Cortez's testimony was based?

7. Did the trial court properly hold the Appellants jointly and severally liable as parties to the trespass of the Garzas' property?

Statement of Facts ...................................................................................4

1. Eleuterio Salinas executed a warranty deed in 1942, conveying 271 acres of Share 13 to Guadalupe Garza Zamora.............................4

2. The Garzas attempted to enforce and defend the 1942 Deed in the Coates Maddux Litigation, but title failed. ....................................5

3. The Garzas filed suit against Appellants..............................................6

4. The Garzas revived the action via a bill of review. .............................6

5. The trial court denied Appellants' Plea in Abatement.........................7

6. The trial court entered judgment for the Garzas on all claims, holding Appellants jointly and severally liable...................................7

7. Appellants appealed with an incomplete record. .................................8

iii

Summary of the Argument............................................................8

Standard of Review................................................................10

Argument..........................................................................10

    I.    The Garzas' suit is not barred by the statute of limitations, and Juan Lino Garza, Sr. is a proper plaintiff. ............................12

        A.    The Garza Trusts had standing and capacity to bring suit, and their corrected petition relates back. ................13

            1.    The Garzas' amended petition corrected a misnomer regarding the Garza Trusts. ..........13

            2.    Appellants' challenge to the Garza Trusts' "standing" is in fact an issue of capacity, and the Garzas' corrected capacity relates back. ........18

            3.    Furthermore, Appellants did not preserve their challenge to capacity. ...............................21

        B.    Juan Lino Garza, Sr. was a plaintiff with standing at all relevant times. ......................................22

            1.    Juan Lino Garza, Sr. was an assignee with standing, and participated as a named plaintiff since 2001. ........................................23

            2.    Appellants have not provided an adequate record for review of Juan Lino Garza, Sr.'s role as an assignee............................................26

        C.    Regardless, Appellants' challenges to the Garzas' standing address only one of the four independent bases supporting the judgment. ........................30

    II.    The trial court properly denied Appellants' Plea in Abatement. .......32

        A.    The record is insufficient to permit review............33

        B.    The Plea was untimely.........................................34

     C.      The Plea was unverified..........................................................37

     D.      Appellants did not and have not carried their burden to show that there were "indispensable" defendants. ..................38

  III.   The judgment against the estates and trust is valid. ...........................44

     A.      The record shows that the estates and trust participated in the judgment and appeal. .......................................................44

     B.      Regardless, the record is inadequate to reverse the judgment against Olivia Salinas Perez.......................................47

  IV.   The damages award is valid. ...............................................................48

     A.      Appellants have not challenged all separate and independent grounds supporting the damages award. .............48

     B.      The Garzas are entitled to recover damages for trespass to try title and mineral trespass. .................................................50

     C.      There is legally sufficient evidence showing Appellants' interest in Share 13................................................................52

     D.      Appellants were properly held jointly and severally liable for the damages. .......................................................................54

     E.      Appellants did not preserve their challenge to Cortez's foundational data.................................................................57

Conclusion and Prayer ..................................................................................61

Certificate of Compliance .............................................................................63

Certificate of Service ....................................................................................64

# INDEX OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*718 Assocs., Ltd. v. Sunwest N.O.P., Inc.,*
1 S.W.3d 355 (Tex. App.—Waco 1999, pet. denied) ...................................11

*Austin Nursing Ctr., Inc. v. Lovato.*
171 S.W.3d 845 (Tex. 2005) ........................................................ 18, 19, 21

*Bechtel Corp. v. City of San Antonio*,
No. 04-04-00910-CV, 2006 WL 228689 (Tex. App.—San
Antonio Feb. 1, 2006, no pet.) (mem. op.) .....................................................49

*Bernstein v. Portland Sav. & Loan Ass'n,*
850 S.W.2d 694 (Tex. App.—Corpus Christi 1993, writ denied),
*disapproved of on other grounds by Crown Life Ins. Co. v.*
*Casteel,* 22 S.W.3d 378 (Tex. 2000) ..............................................................45

*Bluebonnet Farms, Inc. v. Gibraltar Sav. Ass'n,*
618 S.W.2d 81 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ
ref'd n.r.e.)................................................................................ 32, 34, 35, 36

*Bos v. Smith*,
No. 13-14-00456-CV, 2016 WL 1317691 (Tex. App.—Corpus
Christi Mar. 10, 2016, pet. filed) ...................................................................10

*Britton v. Tex. Dept. of Criminal Justice*,
95 S.W.3d 676 (Tex. App.—Houston [1st Dist.] 2002, no pet.)....................31

*Brooks v. Chevron USA Inc.*,
No. 13-05-029-CV, 2006 WL 1431227 (Tex. App.—Corpus
Christi May 25, 2006, pet. denied) (mem. op.) ..............................................11

*Brown v. Brown*,
236 S.W.3d 343 (Tex. App.—Houston [1st Dist.] 2007, no pet.).................10

*Bulthuis v. Avila*,
No. 13-13-00717-CV, 2015 WL 9487472 (Tex. App.—Corpus
Christi Dec. 29, 2015, pet. denied) (mem. op.) ..............................................29

*Campbell v. Jefferson,*
    453 S.W.2d 336 (Tex. Civ. App.—Tyler 1970, writ dism'd) .......................40

*Carter v. DeJarnatt,*
    523 S.W.2d 88 (Tex. Civ. App.—Texarkana 1975, writ ref'd
    n.r.e.) ........................................................................................ 19, 21

*Christiansen v. Prezelski,*
    782 S.W.2d 842 (Tex. 1990) ............................................... 27, 29, 33

*CMM Grain Co., Inc. v. Ozgunduz,*
    991 S.W.2d 437 (Tex. App.—Fort Worth 1999, no pet.) .......... 27, 29, 33, 34

*Coastal Transport, Inc. v. Crown Cent. Petroleum Corp.,*
    136 S.W.3d 227 (Tex. 2004) .................................................. 58, 59

*Cockrell v. Mullins,*
    No. 14-98-00405-CV, 2000 WL 1158360 (Tex. App.—Houston
    [14th Dist.] Aug. 17, 2000, no pet.) (mem. op., not designated for
    publication) ...........................................................................................33

*Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries,
    Inc.,*
    192 S.W.3d 827 (Tex. App.—Fort Worth 2006, no pet.) .............................23

*Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.,*
    120 S.W.3d 878 (Tex. App.—Fort Worth 2003, pet. denied)......................49

*Cooper Tire & Rubber Co. v. Mendez,*
    204 S.W.3d 797 (Tex. 2006) ....................................................................57

*Cooper v. Tex. Gulf Indus., Inc.,*
    513 S.W.2d 200 (Tex. 1974) .................................................. 38, 39

*Cunningham v. Coyle,*
    1884 WL 8399 (Tex. Ct. App. 1884) .........................................................56

*Damian v. Bell Helicopter Textron, Inc.,*
    352 S.W.3d 124 (Tex. App.—Fort Worth 2011, pet. denied)......................21

*Davis v. Preston,*
    16 S.W.2d 117 (Tex. 1929) .............................................. 18, 19, 20

*Deutsche Bank Nat'l Trust Co. v. Jones*,
    No. 13-14-00464-CV, 2015 WL 4116860 (Tex. App.—Corpus
    Christi July 2, 2015, no pet.) (mem. op.)........................................................10

*E.I. du Pont de Nemours & Co., Inc. v. Robinson*,
    923 S.W.2d 549 (Tex. 1996) .......................................................................58

*Ernst v. Banker's Servs. Group, Inc.*,
    No. 05-98-00496-CV, 2001 WL 1256524 (Tex. App.—Dallas
    Oct. 22, 2001, pet. denied) (mem. op., not designated for
    publication) ................................................................................................42

*Flowers v. Steelcraft Corp.*,
    406 S.W.2d 199 (Tex. 1966) .......................................................................38

*Fox v. Maguire*,
    224 S.W.3d 304 (Tex. App.—El Paso 2005, pet. denied)............................31

*Fox v. Wardy*,
    234 S.W.3d 30 (Tex. App.—El Paso 2007, pet. dism'd n.o.j.) ....................29

*Garza v. Maddux*,
    988 S.W.2d 280 (Tex. App.—Corpus Christi 1999, pet. denied) ..................5

*Gillett v. Achterberg*,
    325 S.W.2d 384 (Tex. 1959) .......................................................................50

*Gross v. Carroll*,
    339 S.W.3d 718 (Tex. App.—Houston [1st Dist.] 2011, no pet.)................31

*Guajardo v. Conwell*,
    46 S.W.3d 862 (Tex. 2001) .........................................................................28

*Harris v. Hooper*,
    No. 04–10–00378–CV, 2011 WL 4389908  (Tex. App.—San
    Antonio 2011, no pet.) (mem. op.) .............................................................33

*Hedley Feedlot, Inc. v. Weatherly Trust*,
    855 S.W.2d 826 (Tex. App.—Amarillo 1993, writ denied)................... 38, 39

*Hernandez v. Hernandez*,
    318 S.W.3d 464 (Tex. App.—El Paso 2010, no pet.) ..................................25

*Hexamer v. Topographic Land Surveyors*,
No. 05-97-00108-CV, 1999 WL 114390 (Tex. App.—Dallas Mar. 4, 1999, no pet.) (mem. op., not designated for publication) ........................55

*Highland Credit Opportunities CDO, L.P. v. UBS AG,*
451 S.W.3d 508 (Tex. App.—Dallas 2014, no pet.) ............................ 49, 52

*Howell v. Mauzy*,
899 S.W.2d 690 (Tex. App.—Austin 1994, writ denied) .............................35

*HSBC Bank USA, N.A. v. Watson,*
377 S.W.3d 766 (Tex. App.—Dallas 2012, pet. dism'd) ................. 23, 24, 26

*Imagine Auto. Group v. Boardwalk Motor Cars, Ltd.,*
430 S.W.3d 620 (Tex. App.—Dallas 2014, pet. denied) ..............................47

*In re Graybar Elec. Co., Inc.,*
No. 13-08-00073-CV, 2008 WL 3970865 (Tex. App.—Corpus Christi Aug. 26, 2008, orig. proceeding) (mem. op.) ....................................39

*In re Greater Houston Orthopedic Specialists, Inc.*,
295 S.W.3d 323 (Tex. 2009) (orig. proceeding) ................................... 13, 17

*Izaguirre v. Rivera*,
No. 14-12-00081-CV, 2012 WL 2814131 (Tex. App.—Houston [14th Dist.] July 10, 2012, no pet.) (mem. op.) .............................................31

*Jones v. Barnes*,
463 U.S. 745 (1983)......................................................................................12

*Lacy v. Jackson*,
No. 13-11-00364-CV, 2012 WL 432698 (Tex. App.—Corpus Christi Feb. 9, 2012, no pet.) .......................................................................31

*Ledbetter v. Howard*,
395 S.W.2d 951 (Tex. Civ. App.—Waco 1965, no writ).............................48

*Longoria v. Exxon Mobil Corp.,*
No. 04-15-00536-CV, 2016 WL 4013793 (Tex. App.—San Antonio July 27, 2016, pet. filed) (mem. op.) ................................................38

*Longoria v. Exxon Mobil Corp.*,
255 S.W.3d 174 (Tex. App.–San Antonio 2008, pet. denied) ............... 41, 42

*Mar. Overseas Corp. v. Ellis,*
 971 S.W.2d 402 (Tex. 1998) .......................................................... 58, 60, 61

*McCarthy v. George,*
 618 S.W.2d 762 (Tex. 1981) ...................................................................38

*McFarland v. Szakalun,*
 809 S.W.2d 760 (Tex. App.—Houston [14th Dist.] 1991, writ
 denied) ...............................................................................................47

*Merrell Dow Pharm. v. Havner,*
 953 S.W.2d 706 (Tex. 1997) ....................................................................58

*Miller v. Bank of the W.,*
 No. 01-88-00195-CV, 1988 WL 88320 (Tex. App.—Houston [1st
 Dist.] Aug. 25, 1988, no writ)............................................................23

*Musquiz v. Marroquin,*
 124 S.W.3d 906 (Tex. App.—Corpus Christi 2004, pet. denied) .................51

*Nichols v. Byrne,*
 No. 13-97-456-CV, 1999 WL 58570 (Tex. App.—Corpus Christi
 Jan. 28, 1999, no pet.) (mem. op.)...................................................49

*Nobility Homes of Tex., Inc. v. Shivers,*
 557 S.W.2d 77 (Tex. 1977) ................................................................ 31, 49

*Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.,*
 925 S.W.2d 659 (Tex. 1996) ............................................................... 21, 22

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship,*
 323 S.W.3d 203 (Tex. App.—El Paso 2010, pet. denied)...........................24

*Parker v. Kangerga,*
 482 S.W.2d 43 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.)...................55

*Pierson v. SMS Fin. II, L.L.C.,*
 959 S.W.2d 343 (Tex. App.—Texarkana 1998, no pet.) ...................... passim

*Pirtle v. Gregory,*
 629 S.W.2d 919 (Tex. 1982) .......................................................... 32, 38, 39

x

*Plebian Partners, Ltd. v. McCorkle,*
 No. 9-98-320 CV, 1999 WL 199641 (Tex. App.—Beaumont Apr. 1, 1999, pet. denied) (mem. op., not designated for publication) .................55

*Pledger v. Schoellkopf,*
 762 S.W.2d 145 (Tex. 1988) .................................................................37

*Pyles v. Young,*
 No. 06-07-00066-CV, 2007 WL 4462738 (Tex. App.—Texarkana Dec. 21, 2007, no pet.)............................................................ 27, 29, 33, 34

*Retzlaff v. Mendieta-Morales,*
 356 S.W.3d 676 (Tex. App.—El Paso 2011, no pet.) ...................... 27, 28, 29

*S. County Mut. Ins. Co. v. Ochoa,*
 19 S.W.3d 452 (Tex. App.—Corpus Christi 2000, no pet.).........................37

*Sabre Oil & Gas Corp. v. Gibson.*
 72 S.W.3d 812 (Tex. App.—Eastland 2002, pet. denied)...................... 42, 43

*San Antonio Press, Inc. v. Custom Bilt Mach.,*
 852 S.W.2d 64 (Tex. App.—San Antonio 1993, no writ)................ 31, 32, 49

*Sixth RMA Partners, L.P. v. Sibley,*
 111 S.W.3d 46 (Tex. 2003) .................................................................21

*Tex. Oil & Gas Corp. v. Ostrom,*
 638 S.W.2d 231 (Tex. App.—Tyler 1982, writ ref'd n.r.e.).........................42

*United Sav. Ass'n of Tex. v. Villanueva,*
 878 S.W.2d 619 (Tex. App.—Corpus Christi 1994, no writ) .......................51

*United States v. Rutherford Oil Corp.,*
 CIV.A. G-08-0231, 2009 WL 1351794 (S.D. Tex. May 13, 2009).............34

*Univ. of Tex. Med. Branch at Galveston v. Allan,*
 777 S.W.2d 450 (Tex. App.—Houston [14th Dist.] 1989, no writ).............23

*Victory Energy Corp. v. Oz Gas Corp.,*
 461 S.W.3d 159 (Tex. App.—El Paso 2014, pet. denied).................... passim

*Walker v. Read,*
 59 Tex. 187 (Tex. 1883) .....................................................................54

*Werner v. Colwell,*
    909 S.W.2d 866 (Tex. 1995) .............................................................44

*Wolf v. City of Mission,*
    No. 13-12-00737-CV, 2013 WL 7864086 (Tex. App.—Corpus
    Christi Aug. 29, 2013, no pet.) ........................................................31

**Other Authorities**                                                    **Page(s)**

70 Tex. Jur. 3d *Trespass to Realty* § 12 (2016) ......................................55

70 Tex. Jur. 3d *Trespass to Realty* § 14 (2016) ......................................55

William V. Dorsaneo, III, *Compulsory Joinder of Parties in Texas,* 14
    HOUS. L.REV. 345, 369 (1977) ......................................................32

**Rules**                                                                **Page(s)**

TEX. R. APP. P. 33.1 ............................................................... 60, 61

TEX. R. APP. P. 34.6(c)(1) ...........................................................29

TEX. R. APP. P. 38.1(i) ...............................................................25

TEX. R. CIV. P. 152 ....................................................................44

TEX. R. CIV. P. 39(b) ..................................................................39

TEX. R. CIV. P. 783(f) .................................................................51

TEX. R. CIV. P. 93(1) ..................................................................21

TEX. R. CIV. P. 93(4) ..................................................................37

**TO THE HONORABLE THIRTEENTH COURT OF APPEALS:**

Appellees Juan Lino Garza, Sr., Juan Lino Garza, Jr. as trustee of the Juan Lino Garza Trust; and Juan Lino Garza, Jr. and Elma Irene Garza as co-trustees of the Juan Lino Garza Energy Trusts A-1 and A-2 (collectively, the "Garzas") file this brief asking the Court to affirm the trial court's final judgment. In support thereof, Appellees respectfully show the following:

## GUIDE TO CITATIONS

Citations to the record are as follows: CR[page], referencing the Clerk's Record by page number; and [volume]RR[page]:[line], referencing the Reporter's Record by volume, page, and line number. Reference to Appellants' Brief is Appellants' Brief at [page].

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case:* | This is a suit for breach of warranty of title, breach of the covenant against encumbrances, breach of implied covenants, and trespass to try title, all stemming from a 1942 deed executed by Appellants' predecessor in interest.[1] |
| *Course of Proceedings:* | The case was tried to the bench before the Honorable Rodolfo Delgado, judge of the 93rd District Court of Hidalgo County, Texas.[2] |

---

[1] CR94–108 (Fourth Amended Original Petition).
[2] CR195–97.

1

*Trial Court's Disposition:*    The trial court entered a final judgment in Appellees' favor on April 30, 2015.[3] The trial court issued findings of fact and conclusions of law supporting the judgment.[4]

# STATEMENT REGARDING ORAL ARGUMENT

This is an appeal from a final judgment. Appellees do not believe oral argument would aid the Court in deciding this appeal. The issues in this case do not require any new interpretations of law, but application of established principles of common and statutory law to the evidence. However, if the Court determines that oral argument is necessary, Appellees request the opportunity to participate.

# ISSUES PRESENTED (RESTATED)

1. Did the trial court properly award damages for Appellants' trespass on the Garzas' property? Must this Court affirm the award of damages since Appellants attack only one of four independent causes of action supporting the judgment?

2. Can Appellants take advantage of a now-cured misnomer in the pleadings, even though Appellants actively participated in the litigation for nearly a decade without raising the issue and were not confused, disadvantaged, or even impacted by the misnomer?

3. Can Appellants avoid liability by refusing to acknowledge the existence of an assignment providing Juan Lino Garza, Sr. with standing to bring suit regarding the 108 acres at issue?

4. Did the trial court properly deny Appellants' plea in abatement?

---

[3]    CR195–200.
[4]    CR223–36.

2

a.	Have Appellants provided a sufficient record to permit review of the trial court's denial of Appellants' Plea in Abatement—a Plea on which Appellants had the burden of proof—despite Appellants' failure to provide a transcript of the hearing on their Plea?

b.	Did the trial court properly deny Appellants' Plea in Abatement by focusing on pragmatism in applying Texas Rule of Civil Procedure 39, as directed by the Texas Supreme Court, and fully resolving the issues before the court?

c.	Did the trial court properly deny Appellants' Plea in Abatement when Appellants had the burden to show that the relevant parties were indispensable, but failed to establish or even address the factors in Texas Rule of Civil Procedure 39(b)?

5.	Did the trial court obtain jurisdiction over the deceased defendants' estates and trust through their participation in the trial and appeal?

6.	Did Appellants waive their challenge to the reliability of the foundational data underlying Richard Cortez's expert testimony by failing to request a *Daubert* hearing, failing to object at trial, and agreeing to the admission of the documents on which Cortez's testimony was based?

7.	Did the trial court properly hold the Appellants jointly and severally liable as parties to the trespass of the Garzas' property?

## STATEMENT OF FACTS

### 1. Eleuterio Salinas executed a warranty deed in 1942, conveying 271 acres of Share 13 to Guadalupe Garza Zamora.

This case stems from a legal dispute, resulting in a judgment and a later warranty deed (the "Deed") executed by Appellants' predecessor in interest—Eleuterio Salinas—in 1942.[5]

On September 14, 1942, the 93rd District Court of Hidalgo County, Texas entered a final judgment in a case styled *Eleuterio Salinas, et ux vs. Guadalupe Garza Zamora, et ux*, granting Guadalupe Garza Zamora title to 271 acres out of Share 13 of the Schunior Subdivision in Porciones Nos. 73, 74 and 75 in Hidalgo County, Texas.[6] The next day, Eleuterio Salinas executed a Deed conveying the 271 acres of land to Appellees' predecessor in interest, Guadalupe Garza Zamora.[7] Although the Deed specified a particular plot of land by metes and bounds, it independently and explicitly warranted the acreage in Share 13 as follows:

> Grantor does however unconditionally warrant 271 acres of land in Share Thirteen (13) and agrees that if in a partition on account of other owners, the Grantee herein should be unable to secure the 271 acres at the location herein above described, the Grantee shall nevertheless have under this conveyance 271 acres out of Share Thirteen (13), which is hereby in all things warranted by the Grantor.[8]

---

5    5RR Ex. PX-8; CR94–108, 116–17.
6    5RR Ex. PX-9.
7    5RR Ex. PX-8; CR94–108, 116–17.
8    CR116–17, 165, 210, 224; 5RR Ex. PX-8–9.

4

The Garzas took possession of the 271 acres designated by the metes and bounds description in the Deed.[9]

## 2. The Garzas attempted to enforce and defend the 1942 Deed in the Coates Maddux Litigation, but title failed.

On January 7, 1988, the Garzas filed suit in the 275th District Court of Hidalgo County in Cause No. 13-97-109-CV, *Juan Lino Garza, et al, v. Elizabeth H. Coates Maddux, et al* ("Coates Maddux Litigation").[10] The dispute centered around the mineral rights to 108 acres out of the 271 acres that were identified by metes and bounds and purportedly conveyed by Eleuterio Salinas to Guadalupe Garza Zamora in the 1942 Deed. The defendants in the Coates Maddux Litigation argued that the disputed 108 acres were not in Share 13 but rather, were in Share 15, and thus were never Salinas's property to convey.[11] The trial court granted summary judgment in favor of the defendants.[12] The judgment was affirmed by this Court, and the Texas Supreme Court denied review on November 12, 1999.[13]

---

[9]    2RR17, 32–33, 39, 41, 54, 80, 97; 33RR58–59.
[10]   CR100, 122, 148, 209, 224.
[11]   CR224.
[12]   CR224.
[13]   *Garza v. Maddux*, 988 S.W.2d 280 (Tex. App.—Corpus Christi 1999, pet. denied); CR224.

### 3.  The Garzas filed suit against Appellants.

On November 13, 2001, the Garzas filed suit against Appellants in the 93rd District Court of Hidalgo County in Cause No. C-1948-01-B.[14] The Garzas asserted breach of warranty of title and trespass to try title claims based on the 108 acres of Share 13 that were not properly conveyed.[15] The trial court entered an order of dismissal for want of prosecution without notice to the Garzas on May 12, 2004.[16]

### 4.  The Garzas revived the action via a bill of review.

The Garzas filed a bill of review in Cause No. C-2647-05-B on October 26, 2005.[17] The bill was granted on May 10, 2010.[18] The Garzas amended their petition as the case progressed, filing their Fourth Amended Petition in February 2014.[19] The Fourth Amended Petition updated the plaintiffs named in the suit to remove multiple parties, to clarify the capacity in which Juan Lino Garza, Jr. brought suit, and to correct a misnomer regarding the Juan Lino Garza Energy Trusts A-1 and A-2 (the "Garza Trusts").[20]

---

[14]  CR28, 225. Records from the original cause have not been included in the appellate record.

[15]  CR31, 225.

[16]  CR29.

[17]  CR23–33.

[18]  CR55–56.

[19]  CR94–117.

[20]  The Garza Energy Trust terminated in 2004 and passed an interest in the mineral estate to the Juan Lino Garza Energy Trusts A-1 and A-2. 5RR Ex. DX-4. However, the Garza Energy Trusts were misnamed in the pleadings until the Fourth Amended Petition. CR94–117; 5RR Ex. DX-1.

## 5.  The trial court denied Appellants' Plea in Abatement.

Eight years after the Garzas initially filed their bill of review, Appellants filed an unverified Plea in Abatement or Alternatively, Motion to Dismiss, claiming that the Garzas needed to join additional defendants.[21] The Plea was amended with another unverified plea approximately six months later.[22]

On October 8, 2014—nearly nine years after the Garzas filed their bill of review—Appellants secured a hearing and ruling on the motion.[23] The proceedings are not included in the appellate record, and it is unclear what—if any—evidence Appellants offered during such hearing to carry their burden and attempt to establish the assertions made in their Plea.[24] Regardless, the trial court denied Appellants' Plea in Abatement on October 9, 2014.[25] At no time—either before or after the trial court's ruling—did Appellants attempt to join or designate any defendants themselves.

## 6.  The trial court entered judgment for the Garzas on all claims, holding Appellants jointly and severally liable.

The case proceeded to a bench trial on November 12, 2014.[26] The trial court entered judgment in favor of the Garzas, holding Appellants jointly and severally liable for breach of warranty of title, breach of the covenant against encumbrances,

---

[21]  CR85–89, 127–37.
[22]  CR127–37.
[23]  CR157.
[24]  *Id.*
[25]  *Id.*
[26]  CR195.

breach of implied covenants, and trespass to try title, and awarding damages of $3,062,129.43, attorney fees for trial and appeal, and interest, while also declaring the Garzas' ownership of 13.5 acres in Share 13.[27] Appellants requested findings of fact and conclusions of law, which the trial court entered on August 26, 2015.[28] No additional findings of fact or conclusions of law were requested.[29]

## 7. Appellants appealed with an incomplete record.

Appellants filed a notice of appeal on July 28, 2015.[30] Appellants requested preparation of the Reporter's Record only as to the bench trial conducted in November 2014.[31] The transcript of the hearing on Appellants' Plea in Abatement was not requested.[32] Appellants also requested preparation of the Clerk's Record from Cause No. C-2647-05-B, but not from Cause No. C-1948-01-B.[33]

## SUMMARY OF THE ARGUMENT

In vivid, poetic language, Appellants argue that the trial court's judgment creates a "dystopian world" of unfairness in which "[t]he sins of the fathers are visited on the sons." Appellants' Brief at 45. However, what Appellants call "dystopian" the legal community has long called "running with the land," or

---

[27] CR195–97, 223–26. The Garzas own a 1/8 interest in the 108 acres at issue in this case. 2RR66:15–25, 67:11–15; 5RR Ex. PX-10. Thus, the trial court's declaration addressed only 13.5 acres. CR195–97; 3RR55; 4RR33–34.
[28] CR223–26.
[29] *See, generally,* CR.
[30] CR212–13.
[31] CR215–17.
[32] CR215–17.
[33] CR218–21.

8

simply "binding." Eleuterio Salinas expressly intended for his Deed to bind his "heirs and assigns forever" when he executed the document in 1942. While Appellants may claim that this is unfair, Texas courts interpret and enforce deeds based on *laws* rather than one party's subjective estimation of what "looms over the crib of every swaddled infant." *Id.* Unfortunately, for Appellants, their legal arguments are meritless.

Appellants raise nine issues on appeal, challenging everything from the measure of damages, to the failure to join allegedly indispensable defendants, to the reliability of the Garzas' expert testimony, to the statute of limitations. The vast majority of these arguments have been waived−whether by Appellants' failure to object at trial, failure to attack each independent basis for the challenged finding, failure to provide an adequate appellate record for review of the issue, or some combination of these flaws. Moreover, even if Appellants' challenges had been properly preserved, they are unsupported. The trial court's judgment simply enforced and provided relief for the valid 1942 Deed—a deed that Appellants would have this Court ignore. However, neither the 1942 Deed, nor the laws that mandate its enforcement can be ignored. Thus, the trial court's judgment must be affirmed.

## STANDARD OF REVIEW

"In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict." *Bos v. Smith*, No. 13-14-00456-CV, 2016 WL 1317691, at *13 (Tex. App.—Corpus Christi Mar. 10, 2016, pet. filed); *Brown v. Brown*, 236 S.W.3d 343, 347-48 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The appellate court applies the same standards of review, using the well-known legal and factual sufficiency standards applied to a jury verdict. *Deutsche Bank Nat'l Trust Co. v. Jones*, No. 13-14-00464-CV, 2015 WL 4116860, at *4 (Tex. App.—Corpus Christi July 2, 2015, no pet.) (mem. op.).

## ARGUMENT

Appellants raise nine issues[34] in support of their general complaint that the trial court's judgment creates a "dystopian world" in which "[t]he sins of the fathers are visited on the sons, and then on their sons, ad infinitem," resulting in a "dark and brooding cloud of potential liability . . . [that] looms over the crib of every swaddled infant."[35] The laws purportedly leading to such "dystopia," however, are more commonly known as property rights, or, more specifically, covenants that run with the land.[36] *See, e.g., Brooks v. Chevron USA, Inc.*, No. 13-05-029-CV, 2006 WL 1431227, at *8 (Tex. App.—Corpus Christi May 25, 2006,

---

[34] Appellees construe these nine issues as seven arguments.
[35] Appellants' Brief at 45.
[36] *Id*.

10

pet. denied) (mem. op.) ("Covenants running with the land bind the heirs and assigns"); *718 Assocs., Ltd. v. Sunwest N.O.P., Inc.,* 1 S.W.3d 355, 364 (Tex. App.—Waco 1999, pet. denied) (same). Eleuterio Salinas not only recognized, but *expressly intended* to invoke such laws when he executed his 1942 Deed and bound his "heirs and assigns forever."[37] Appellants, in fact, do not dispute that the covenants underlying this suit run with the land, but nonetheless weave a hyperbolic fairness argument throughout their brief in an attempt to bolster their otherwise-weak legal case.[38] Yet, there is nothing unfair about granting relief for a deed that has been contemptuously ignored and transgressed for more than a half-century.

Moreover, this case is governed by the law—not by Appellants' subjective assessment of what constitutes a "dystopian" outcome. Appellants' legal arguments are woefully flawed. Appellants argue that, (1) the breach of warranty of title claim was barred by the statute of limitations because the only plaintiffs with standing to bring the breach of warranty of title claims were not added until 2014; (2) the trial court abused its discretion by denying Appellants' Plea in Abatement and proceeding with the case without joining indispensable parties; (3) the judgment is void as against the named estates and trust; (4) the damages for

---

[37] 5RR Ex. PX-6.

[38] Appellants' Brief at 24 ("it is generally accepted that a warranty of title runs with the land").

11

Appellees' breach of warranty of title claim must be limited to each heir's share of the consideration paid for the land; (5) the expert testimony regarding damages is no evidence because it stems from unreliable foundational data; and (6) there is no legal basis for joint and several liability.[39] Appellants are essentially throwing every issue at the wall to see what sticks, and the "[m]ultiplicity hints at [their] lack of confidence in any one [argument]." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). Upon further examination, such lack of confidence is understandable; Appellants' arguments are neither valid, nor fully preserved, nor adequately presented.

## I. The Garzas' suit is not barred by the statute of limitations, and Juan Lino Garza, Sr. is a proper plaintiff.

By their third and fourth issues, Appellants assert that the Garzas' breach of warranty of title claim is barred by the statute of limitations because the Garza Trusts—the only plaintiffs Appellants acknowledge have standing to sue—were not properly identified in the pleadings until 2014, after the statute of limitations had expired.[40] Appellants' challenge relies on two strawman arguments: (a) mischaracterizing the Garzas' correction of a misnomer as a substantive change in the parties; and (b) pretending that Juan Lino Garza, Sr.'s standing stems from his

---

[39] *See generally,* Appellants' Brief.
[40] Appellants' Brief at 24–29.

record interest in the 108 acres, rather than his interest as an assignee.[41] Moreover, Appellants attack the Garzas' ability to bring suit as to only one of the four independent causes of action supporting the judgment. Thus, for multiple reasons, these issues must be overruled.

## A. The Garza Trusts had standing and capacity to bring suit, and their corrected petition relates back.

First, although Appellants frame their attack on the Garza Trusts as an issue of standing, it is in fact a simple misnomer. At most, such misnomer misstated the plaintiffs' capacity, and Appellants' purported error was not preserved for appeal.

## 1. The Garzas' amended petition corrected a misnomer regarding the Garza Trusts.

The Garzas' Fourth Amended Petition did not add new parties; it corrected a misnomer. When a plaintiff misnames itself in a pleading but the correct parties are served and involved in the suit, the matter is a simple misnomer and does not negate the plaintiff's standing nor implicate the statute of limitations. *In re Greater Houston Orthopedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (orig. proceeding); *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347 (Tex. App.— Texarkana 1998, no pet.). When the error is corrected, the amended pleading relates back to the original date of filing. *In re Greater Houston Orthopedic*

---

[41] *Id.*

*Specialists, Inc.*, 295 S.W.3d at 326. Plaintiff's Fourth Amended Petition naming the Garza Trusts thus relates back.

For example, in *Pierson v. SMS Fin. II, L.L.C.,* the Bank of Longview loaned Pierson and Ross $350,000 for real estate. 959 S.W.2d at 345–46. Team Bank acquired the note through a series of assignments and mergers, and, in 1991, sued to collect on the debt. *Id.* at 346. While the suit was pending, the FDIC reacquired the note, then sold it to SMS Financial II along with Team Bank's related causes of action. *Id.* Meanwhile, the statute of limitations expired in 1995. *Id.* In 1996, SMS Financial I—a separate corporate entity from SMS Financial II— was incorrectly substituted as the sole plaintiff. *Id.* Four months later, SMS Financial II filed another amended pleading reflecting *it* as the sole plaintiff. *Id.* The trial court held that the claim was not barred by the statute of limitations. *Id.*

On appeal, Pierson and Ross claimed that SMS's suit was barred, as the company misidentified itself and did not properly become a party until after the statute of limitations had expired. *Id.* at 347. The Texarkana Court of Appeals distinguished between misidentification and misnomer, finding that SMS's pleading error was a misnomer because "the correct parties are involved" and

14

"received notice of the suit." *Id.* at 347–48.[42] SMS's correction of the misnomer

was not barred by the statute of limitations. *Id.* The court explained:

> The purpose behind statutes of limitations is to compel a party to file suit within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh. A timely petition preserves this purpose when it gives fair notice of the suit to the opposing party. Indeed, the statute of limitations should not apply in circumstances where no party is misled or disadvantaged by the error in pleading.
> . . . .
> Moreover, the misnomer in this case was that of the *plaintiff,* not the defendant. . . . [T]he correct defendants were sued in the correct court, and they knew the allegations, facts, and circumstances that founded the claim against them. . . . Consequently, they had no disadvantage in obtaining relevant evidence to defend the suit against SMS II simply because the original petition named SMS I.

*Id.* at 347–48 (internal citations omitted). As such, the corrected pleading related

back to the original petition; SMS's misnomer did not implicate the statute of

limitations. *Id.*

As in *Pierson,* this case involves a misnomer of the plaintiff. Juan Lino

Garza, Jr. testified—at Appellants' prompting—as follows:

> Q.     [Mr. Schell] When were those mineral interests conveyed into A-1 and A-2?

---

[42]     "Misidentification is when the party named in the pleading is not the party with an interest in the suit. Misnomer is when a party misnames either himself or the opposing party in a pleading, but the correct parties are involved." *Pierson,* 959 S.W.2d at 347–48.

15

A.     [Juan Lino Garza, Jr.] Those minerals were actually originally in the Garza Energy Trust, which was conveyed by the -- well, it was gifted by the Parents Trust to the Garza Energy Trust in 1994 and '95. Then during that interim, Juan Lino Garza, Sr., gifted those minerals into the Juan Lino Garza Energy Trust A-1 and A-2.

. . . .

Q.     All right. So, is there any reason then why Trust A-1 and A-2 were not plaintiffs in 2001 when this action was first brought?

A.     When this action was first brought, the minerals were under the Garza Energy Trust, a holding trust.

. . . .

Q.     All right. So, whatever mineral interests were in the Garza Energy Trust, upon termination of that trust, those passed to Trust A-1 and A-2?

A.     Correct.

Q.     All right. So, that would have been in 2004; is that right?

A.     Yes.[43]

Thus, this is simply a case in which the plaintiffs failed to update their name in the pleadings. When the case was initially filed in 2001, the Garza Energy Trust was properly named as a plaintiff.[44] Similarly, when the case went to trial in 2014, the Juan Lino Garza Energy Trusts A-1 and A-2 were properly named as plaintiffs.[45] Appellants' own chart—offered into evidence to summarize the parties named in the case since its original filing in 2001—confirms Juan Lino Garza's

---

[43]     2RR55:23–60:10; 5RR Ex. DX-3, D-4 (Termination of Trust, reflecting distribution of mineral interests held by Garza Energy Trust upon termination in December 2004).

[44]     2RR55:23–60:10; 5RR Ex. PX-2, DX-3.

[45]     2RR55:6–19.

testimony that the individuals representing these trusts were involved in the case from the beginning.[46] Juan Lino Garza, Jr. and Juan Lino Garza, Sr. were plaintiffs in the suit at all times since its filing in 2001, whether as individuals, trustees, or both.[47] Thus, there is no contention that the wrong individuals were involved in the suit, that Appellants lacked notice of the charges against them, or that Appellants were otherwise misled or disadvantaged by the pleadings. The Garzas served and responded to discovery, took depositions, designated expert witnesses, and participated in pretrial hearings prior to correcting the misnomer in their petition.[48] Defendants not only failed to raise the misnomer at the time, but still have not shown that the pleading error had a practical effect on the case.

The Garzas do not dispute that it would have been prudent to update the parties in their pleadings to reflect the Garza Trusts as soon as the Garza Energy Trust terminated. However, Appellants do not argue that the Garzas correction of the misnomer was untimely; they argue that it should not have been allowed at all. This is simply false. "[I]n a case like this, in which the plaintiff misnames itself, the rationale for flexibility . . . applies with even greater force." *Houston Orthopedic Specialists,* 295 S.W.3d at 326. As in *Pierson,* the Garzas' initial pleadings tolled the statute of limitations, "and [the] subsequent amendment of the

---

[46]     5RR Ex. DX-1. Due to Appellants' failure to provide a copy of the record from the original cause number, not all petitions reflected in their chart are included in the appellate record.
[47]     5RR Ex. DX-1.
[48]     CR6–22.

17

petition relates back to the date of the original petition." *Pierson*, 959 S.W.2d at 347. Thus, the Garzas' misnomer did not implicate the statute of limitations.

## 2. Appellants' challenge to the Garza Trusts' "standing" is in fact an issue of capacity, and the Garzas' corrected capacity relates back.

Moreover, even if the Garzas' misnomer were viewed as a substantive lapse, Juan Lino Garza, Jr.—a trustee for the Garza Trusts—was a plaintiff in this suit at all relevant times.[49] Thus, the Fourth Amended Petition simply clarified Juan Lino Garza, Jr.'s capacity.[50] Corrections to a plaintiff's misstated capacity relate back to the original petition.

For example, in *Davis v. Preston*, a widow filed suit against the Director General of the Federal Railroads for her husband's workplace death. 16 S.W.2d 117, 117 (Tex. 1929). The widow initially filed her action as an individual, then amended her petition after the statute of limitations expired to sue in her capacity as administratrix of her husband's estate. *Id.* The Texas Supreme Court held that the amendment related back to the widow's original petition, explaining:

> The defect in her petition was that she sued as an individual, instead of as administratrix. She was the real party at interest, no matter by whom the suit was prosecuted. . . . [T]his defect did not prevent her suit

---

[49]    5RR Ex. DX-1

[50]    The Texas Supreme Court has explained that "[a] plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Austin Nursing Ctr., Inc. v. Lovato.* 171 S.W.3d 845, 848–49 (Tex. 2005).

18

from being 'properly commenced,' so far as tolling the statutes of limitations is concerned.

*Id.* at 118. The Court reaffirmed this longstanding rule in *Austin Nursing Center, Inc. v. Lovato,* quoting *Davis* and noting that "a plaintiff's amended pleading alleging representative capacity [after an original petition file as an individual] satisfies the relation-back requirements." 171 S.W.3d 845, 852 (Tex. 2005).

Similarly, in *Carter v. DeJarnatt,* Davye Carter sued on a promissory note owned by her father and executed in her favor. 523 S.W.2d 88, 90 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.). Carter filed suit as the owner of the note. *Id.* After the statute of limitations had expired, Carter amended her petition to reflect that she was in fact *not* the owner of the note, but the constructive trustee for the real owner. *Id.* The trial court dismissed the case, finding that Carter's claim was barred by the statute of limitations. *Id.*

On appeal however, the Texarkana Court of Appeals reversed and remanded for trial. *Id.* The court held that Carter's modification of her capacity as plaintiff was not barred by the statute of limitations. *Id.* at 91. The court noted:

> The amended petition, which was filed after the expiration of the limitation period, did not change the cause of action. . . . The same transaction . . . was the basis of the cause of action in both pleadings. At the most the amended petition merely changed the capacity in which appellant sued. That did not constitute a new cause of action which was barred by limitations.

*Id.* (internal citations omitted).

19

As *Davis* and *Carter* demonstrate, the misstatement of a plaintiff's capacity does not "prevent [a] suit from being 'properly commenced,' so far as tolling the statutes of limitations is concerned," and a later correction of such capacity relates back to the original petition. *Davis,* 16 S.W.2d at 118. Here, the Garzas' original bill of review[51] named the following parties as plaintiffs:

> Juan Lino Garza, Sr. and Guadalupe Garza, Jr., Trustees of the Garza Energy Trust, Juan Lino Garza, Sr., Juan Lino Garza, Jr., Trustee of the Juan Lino Garza Trust, Ma. Rita Garza Carrales, Individually and as Independent Executrix of the Estate of Jose Carmen Garza, Deceased, Guadalupe Garza, Jr., Aida A. Garza Lopez, Romulo Garza and Eduardo Garza[52]

The Garzas' 2014 Fourth Amended Petition updated the plaintiffs as follows:

> Juan Lino Garza Sr.; Juan Lino Garza Jr. as trustee of the Juan Lino Garza Trust; and Juan Lino Garza Jr. and Elma Irene Garza as co-trustees of the Juan Lino Garza Energy Trust A-1 and A-2[53]

Juan Lino Garza, Jr. remained a plaintiff in this suit—whether as an individual or trustee—at all relevant times.[54] As noted in Section I(A)(1), *supra,* Appellants do not dispute that the same individuals who filed the bill of review in 2005 ultimately participated in the 2014 trial as trustees.[55] Nor do they contend that the amendment

---

[51] Plaintiffs' original petition in 2001 is not included in the record. *See, generally,* CR.

[52] CR23–24. Juan Lino Garza, Sr. remained a party to the suit in his individual capacity at all relevant times. *See* 5RR Ex. DX-1. However, Appellants separately challenge Juan Lino Garza, Sr.'s standing as an assignee. *See infra,* Section I(B).

[53] CR223–26.

[54] 5RR Ex. DX-1.

[55] Section I(A)(1); *see also* 5RR Ex. DX-1.

20

somehow surprised them or deprived them of notice of the claim.[56] Thus, even if Appellants' Fourth Amended Petition were interpreted as a substantive correction of the plaintiff's capacity rather than a misnomer, the amended petition nonetheless relates back. *Carter*, 523 S.W.2d at 91; *Pierson,* 959 S.W.2d at 347.

### 3. Furthermore, Appellants did not preserve their challenge to capacity.

Furthermore, if the Garzas' misnomer is interpreted as a substantive change in capacity, Appellants failed to preserve the issue. "Unlike standing, an argument that an opposing party does not have the capacity to participate in a suit can be waived." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex. 1996); *see also Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003) (holding waiver of a capacity argument occurs "by a party's failure to properly raise the issue in the trial court."); *Damian v. Bell Helicopter Textron, Inc.,* 352 S.W.3d 124, 141 (Tex. App.—Fort Worth 2011, pet. denied) (same). A party must preserve its challenge by filing a verified pleading challenging the plaintiff's capacity. TEX. R. CIV. P. 93(1); *see also Nootsie,* 925 S.W.2d at 662 ("Texas Rule of Civil Procedure 93(1) requires a party to file a verified pleading if it argues that 'the plaintiff has no legal capacity to sue'"); *Lovato,* 171 S.W.3d at 849 ("a challenge to a party's capacity must be raised by a verified pleading"). Here, Appellants did not file a verified answer or plea in abatement challenging the

---

[56] Section I(A)(1).

21

Garzas' capacity.[57] In fact, Appellants' answer challenged the capacity in which *the defendants* were sued, but did not mention the Garzas' capacity at all.[58] Appellants then filed an *unverified* Plea in Abatement that mentioned nothing about the Garzas' capacity to maintain the suit.[59] Appellants notably failed to raise their challenge to the Garzas' capacity at trial.

The Texas Supreme Court "ha[s] not hesitated in previous cases to hold that parties who do not follow rule 93's mandate waive any right to complain about the matter on appeal." *Nootsie,* 925 S.W.2d at 662. Thus, Appellants have failed to preserve any challenge to the Garzas' capacity for appellate review.

## B. Juan Lino Garza, Sr. was a plaintiff with standing at all relevant times.

Appellants' challenge to Juan Lino Garza, Sr.'s standing to bring suit ignores his status as an assignee. In fact, Appellants have not even provided an adequate record for review. Thus, their challenge to Juan Lino Garza, Sr.'s standing—and correspondingly, their challenge regarding the statute of limitations—must be overruled.

---

[57] CR34–40, 85–89, 127–37, 138–46.

[58] CR34–40 (Original Answer, claiming Defendants were not sued in the proper capacity), 138–46 (First Amended Original Answer, which served as Appellants' live pleading at trial, and again claimed that Defendants were not sued in the proper capacity).

[59] CR85–89, 127–37.

### 1. Juan Lino Garza, Sr. was an assignee with standing, and participated as a named plaintiff since 2001.

Appellants attack Juan Lino Garza, Sr.'s standing to file suit based on the fact that he is not a record owner of the 108 acres at issue.[60] However, Juan Lino Garza, Sr. never asserted standing as a record owner; he asserted standing as an assignee.[61]

Texas has long allowed the assignment of causes of action. *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 774 (Tex. App.—Dallas 2012, pet. dism'd) ("As a general rule, causes of action are freely assignable."). An assignment is interpreted as a contract between the assignor and assignee, and may be shown by evidence of a party's intention to transfer the right at issue. *Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 833 (Tex. App.—Fort Worth 2006, no pet.); *Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989, no writ) ("An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract."); *Miller v. Bank of the W.,* No. 01-88-00195-CV, 1988 WL 88320, at *2 (Tex. App.—Houston [1st Dist.] Aug. 25, 1988, no writ) ("An assignment may be shown by either direct or circumstantial evidence.").

---

[60]     Appellants' Brief at 30–31.

[61]     *See, e.g.* 2RR48:5–14, 61–62, 66:15–25 (clarifying that Juan Lino Garza, Sr. has interest by way of Litigation Participation Agreement).

For example, in *HSBC Bank USA, N.A. v. Watson,* HSBC brought suit as an assignee of Fieldstone Mortgage. 377 S.W.3d at 769. The trial court dismissed the case, relying on the traditional rule of standing that "a party must assert its own legal rights and interests and cannot rest its claim to relief on the legal rights or interests of third parties." *Id.* at 774. The Dallas Court of Appeals however, recognized that the traditional rules were not the *only* way of acquiring standing. Rather, "[t]he policy of this State is to permit the assignment of a cause of action in the absence of policy reasons to forbid the particular kind of assignment." *Id.* at 775. Thus, HSBC had standing to bring suit due to the assignment of Fieldstone's claim. *Id.*

Again, in *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith Partnership*, Sombrero Oil and Gas Company and Pagosa Oil and Gas Company sued Rickey Smith and the Marrs and Smith Partnership ("Smith") for breach of contract, due to Smith's violation of an oil and gas lease. 323 S.W.3d 203, 208–09 (Tex. App.—El Paso 2010, pet. denied). Although Sombrero was not a party to the underlying contract at issue, Sombrero asserted standing based on assignment of the claim. *Id.* at 209–10. The El Paso Court of Appeals affirmed this assignment, reiterating that "generally, causes of action in Texas are freely assignable." *Id.* at 212.

Here, the Garza family members assigned their claims for recovery of the 108 acres to Juan Lino Garza, Sr. via a Litigation Participation Agreement.[62] The Garzas offered extensive evidence and testimony at trial—including a copy of the signed Litigation Participation Agreement contract itself—establishing the assignment.[63] Juan Lino Garza, Jr. testified that, through the Agreement, "Juan Lino Garza, Sr., contracted with his brothers and sisters to get 30 percent of the proceeds that would be recovered of the 108 acres."[64] The agreement was understood to apply not only to the Coates Maddux Litigation, but also to any necessary appeals and subsequent actions required to enforce the Garzas' right to the 108 acres at issue.[65]

Although Appellants bear the burden to fully present this issue for appeal, they have failed to even address the Litigation Participation Agreement, much less cite authority to show why it allegedly failed to confer standing on Juan Lino Garza, Sr.[66] TEX. R. APP. P. 38.1(i); *Hernandez v. Hernandez*, 318 S.W.3d 464, 466 (Tex. App.—El Paso 2010, no pet.) ("When, as here, the appellate issues are unsupported by argument or lack citation to the record or legal authority, nothing is presented for review."). Rather, Appellants simply pretend the Litigation

---

[62]     5RR Ex. PX-14.
[63]     *Id.*; *see also* 2RR47:16–49:13, 61:25–62:2, 65:25–66:14, 100:18–21.
[64]     2RR100:18–21; *see also* 2RR47:16–49:13, 61:25–62:2.
[65]     2RR65:25–66:14 (Juan Lino Garza, Jr., stating that the Litigation Agreement does not simply apply to the Coates Maddux Litigation, but to the 108 acres).
[66]     Appellants' Brief at 24–31.

25

Participation Agreement does not exist and conclude that Juan Lino Garza, Sr. did not have standing to sue because he was not a record owner of the property at issue.[67] This is a logical fallacy, built on the inaccurate assumption that being the record owner of the relevant property is the *only* way to acquire standing. *HSBC Bank*, 377 S.W.3d at 774–75. More importantly, it is irrelevant; Juan Lino Garza, Sr. did not and does not assert standing based on his personal record interest in the mineral rights at issue.[68] Rather, Juan Lino Garza, Sr. has standing based on his interest as a trustee and as an assignee of his family's claims.[69] Appellants have failed to address or disprove such assignment, and thus their issue must fail.

### 2. Appellants have not provided an adequate record for review of Juan Lino Garza, Sr.'s role as an assignee.

Moreover, Appellants have not presented a sufficient record for review of Juan Lino Garza, Sr.'s assignment. Appellants have omitted the entirety of the original cause of action while conveniently claiming that there is "no evidence" in

---

[67] *Id.* at 30–31 (attacking Juan Lino Garza's standing without even mentioning possibility of an assignment).

[68] *See, e.g.* 2RR48:5–14, 61–62, 66:15–25 (clarifying that Juan Lino Garza, Sr. has interest by way of Litigation Participation Agreement).

[69] 5RR Ex. PX-14. In addition to his interest as an assignee, Juan Lino Garza, Sr. was a trustee of the Garza Energy Trust. *See* CR23 (Original Petition for Bill of Review, naming Juan Lino Garza, Sr. as trustee of Garza Energy Trust); 5RR Ex. DX-1 (spreadsheet of parties). DX-4 (Termination of Garza Energy Trust, reflecting Juan Lino Garza, Sr. as a trustee).

26

their partial record.[70] Thus, Appellants have waived their arguments regarding standing and assignment by failing to provide an adequate record.

"The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal." *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990). Thus, any omissions in the record are presumed to be relevant and to support the judgment. *Pyles v. Young,* No. 06-07-00066-CV, 2007 WL 4462738, at *2 n.6 (Tex. App.—Texarkana Dec. 21, 2007, no pet.) ("If the record is incomplete and the appellant has not complied with Rule 34.6(c), the appellate court must presume that the omitted portions support the judgment or order from which the appeal is taken."); *CMM Grain Co., Inc. v. Ozgunduz,* 991 S.W.2d 437, 439–40 (Tex. App.—Fort Worth 1999, no pet.) ("We must therefore presume that the omitted portions of the record are relevant to this appeal and that the missing evidence supports the trial court's judgment.").

For example, in *Retzlaff v. Mendieta-Morales*, Retzlaff and Morales agreed to a contract prohibiting Morales from making false allegations about Retzlaff to a governmental agency. 356 S.W.3d 676, 678 (Tex. App.—El Paso 2011, no pet.). Eight years later, Retzlaff sued Morales for breach of contract and defamation, and the trial court entered a default judgment against Morales. *Id.* Soon thereafter, Morales filed and was granted a bill of review in a separate cause number. *Id.*

---

[70]     *See, generally,* CR; Appellants' Brief at 30–31.

Morales then filed a motion for summary judgment *in the original cause number*. *Id.* The trial court granted the motion, and Retzlaff appealed. *Id.* at 678–79.

On appeal, Retzlaff provided only the record from the original cause number, attaching copies of the bill of review documents to his appellate brief. *Id.* at 680. The court of appeals held that the record was inadequate to enable review of challenges involving the documents filed in the bill of review cause. *Id.* at 679–81. The court stated:

> When the trial court grants a bill of review, subsequent proceedings on the merits of the original suit should be conducted under the bill of review cause number. The trial court should render the final judgment in the bill of review cause number. **All of the relevant documents and transcripts concerning both the bill of review and the original suit can then be brought before the appellate court in the event of an appeal**. . . . Retzlaff has made no attempt to obtain a complete record. He did not request that the trial court take judicial notice of the proceedings in cause number 345077, nor did he request that relevant documents from cause number 345077 be included in the appellate record. . . . The burden was on Retzlaff, as the party seeking review, to ensure that a sufficient record is presented to show error.

*Id.* at 679–80 (emphasis added). The court further explained that, although the relevant documents were attached to Morales' appellate brief, the court could not consider documents outside the record.[71] *Id.* at 680; *see also Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex. 2001) (refusing to consider trial court order attached to

---

[71]    There are limited exceptions to this rule, none of which were applicable in *Retzlaff* and none of which are applicable to the case at hand.

petition for review); *Fox v. Wardy*, 234 S.W.3d 30, 33 (Tex. App.—El Paso 2007, pet. dism'd n.o.j.) ("The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered."). Thus, Retzlaff waived his arguments regarding Morales' bill of review. *Retzlaff*, 356 S.W.3d at 680.

Similarly, here Appellants claim that there is "no evidence" of Juan Lino Garza, Sr.'s standing to bring suit.[72] However, Appellants have not provided an adequate record to support this claim. The Court can only speculate about whether the Litigation Participation Agreement was challenged or litigated in a hearing in the original cause number; whether Appellees provided additional evidence of the assignment in the original cause; or whether Appellants stipulated to the assignment in the original cause. Appellants cannot take advantage of their own failure to provide an adequate appellate record. Rather, when—as here—the appellant provides an incomplete record, the reviewing court must presume that the omitted portions were relevant and that they supported the judgment.[73] *Christiansen*, 782 S.W.2d at 843; *Bulthuis v. Avila*, No. 13-13-00717-CV, 2015 WL 9487472, at *2 (Tex. App.—Corpus Christi Dec. 29, 2015, pet. denied) (mem. op.); *Pyles,* 2007 WL 4462738, at *2 n.6; *CMM Grain Co.,* 991 S.W.2d at 439–40.

---

[72]    Appellants' Brief at 24–29.

[73]    *See supra*, Section I(B)(2). Under Rule 34.6(c), an appellant can confine the record to specific issues if he "include[s] in the request a statement of the points or issues to be presented on appeal." TEX. R. APP. P. 34.6(c)(1). Here however, Appellants have not filed a statement limiting the issues on appeal.

Thus, Appellants' failure to provide an adequate record undercuts their attack on Juan Lino Garza, Sr.'s standing.

## C. Regardless, Appellants' challenges to the Garzas' standing address only one of the four independent bases supporting the judgment.

Even if Appellants' challenges to the Garzas' capacity, standing, and/or the statute of limitations had merit, Appellants raise such issues only with respect to one claim: the breach of warranty of title.[74] Judgment was expressly entered on four separate claims: breach of warranty of title, breach of the covenant against encumbrances, breach of implied covenants, and trespass to try title.[75] The Garzas also pleaded a mineral trespass occurred, and the trial court found as much.[76] The remaining claims support the judgment and damages, independent of the breach of warranty of title claim.

"[I]f an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, then (1) [the appellate court] must accept the validity of that unchallenged independent ground, and thus (2) any error in the grounds challenged on appeal is harmless

---

[74] Appellants' Brief at 17 (characterizing the case as "a suit for breach of a warranty of title" and arguing that damages for breach of warranty of title are limited to the consideration paid for the conveyance), 24 (framing the key question as "Who has the right to sue to enforce the alleged warranty of title?" and arguing that the Plaintiffs who had standing to enforce the breach of warranty of title claim were not added until 2014), 30 (arguing that Juan Lino Garza lacked bring to bring a breach of warranty of title claim).
[75] CR196 (Final Judgment); CR225 (Findings of Fact and Conclusions of Law).
[76] CR104 (pleading trespass), 225 (Finding of Fact #8).

because the unchallenged independent ground fully supports the complained-of ruling or judgment." *Britton v. Tex. Dept. of Criminal Justice*, 95 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (internal citations omitted); *Izaguirre v. Rivera*, No. 14-12-00081-CV, 2012 WL 2814131, at *2 (Tex. App.—Houston [14th Dist.] July 10, 2012, no pet.) (mem. op.). In sum, "[a]n appellant must attack all independent grounds that fully support an adverse ruling; if he fails to do so, then [the appellate court] must affirm that ruling." *Wolf v. City of Mission*, No. 13-12-00737-CV, 2013 WL 7864086, at *2 (Tex. App.—Corpus Christi Aug. 29, 2013, no pet.) (internal citations omitted); *see also Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 83 (Tex. 1977); *Lacy v. Jackson*, No. 13-11-00364-CV, 2012 WL 432698, at *2 (Tex. App.—Corpus Christi Feb. 9, 2012, no pet.); *Gross v. Carroll*, 339 S.W.3d 718, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Fox v. Maguire*, 224 S.W.3d 304, 307 (Tex. App.—El Paso 2005, pet. denied); *San Antonio Press, Inc. v. Custom Bilt Mach.*, 852 S.W.2d 64, 65 (Tex. App.—San Antonio 1993, no writ).

Here, Appellants attack only one of four independent claims supporting the judgment.[77] Rather than addressing or even acknowledging the four separate bases, Appellants sweepingly characterize the action as "a suit for breach of a warranty of

---

[77] Appellants' Brief at 17.

title."[78] In fact, Appellants do not even specify the statute of limitations for any claim other than the breach of warranty of title.[79] Thus, even if Appellants' challenge to the Garzas' capacity, standing, and/or the statute of limitations had merit, their failure to challenge all independent grounds supporting the judgment leaves this Court with no choice but to affirm. *See San Antonio Press,* 852 S.W.2d at 65.

## II. The trial court properly denied Appellants' Plea in Abatement.

Appellants also challenge the trial court's denial of their Plea in Abatement and refusal to dismiss the suit for misjoinder, insisting that the non-party owners of mineral interests in Share 13 were indispensable defendants.[80] But Appellants failed in three separate ways to comply with the Texas Rules of Civil and Appellate Procedure in presenting and preserving the issue. Thus, the matter is waived. *See, e.g., Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (objection to misjoinder of parties or omitted parties must be preserved in trial court); *Bluebonnet Farms, Inc. v. Gibraltar Sav. Ass'n,* 618 S.W.2d 81, 83 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); William V. Dorsaneo, III, *Compulsory Joinder of Parties in Texas,* 14 HOUS. L.REV. 345, 369 (1977) ("The

---

[78] *See id.* at 9 (statement of the case), 10 ("Fundamentally, this is a suit for breach of a warranty of title."), 27, 30 (asserting that Juan Lino Garza, Sr. had "no standing to sue as a successor in interest to the warranty of title").

[79] *See id.* at 17–24 (no mention of statute of limitations or standing requirements for claims other than breach of warranty of title).

[80] *Id.* at 31–37.

doctrine of fundamental error should no longer protect persons from the binding force of judgments when they have had an opportunity to raise the absence of the nonjoined person and waived it."). Moreover, Appellants failed to carry their burden to establish the necessity of the omitted parties regardless. Thus, the trial court did not abuse its discretion by refusing to dismiss the case. *Cockrell v. Mullins*, No. 14-98-00405-CV, 2000 WL 1158360, at *2 (Tex. App.—Houston [14th Dist.] Aug. 17, 2000, no pet.) (mem. op., not designated for publication).

## A.    The record is insufficient to permit review.

As discussed *supra*, "[t]he burden is on the appellant to see that a sufficient record is presented to show error requiring reversal," and any omissions in the record are presumed to support the judgment or order appealed from.[81] *Christiansen*, 782 S.W.2d at 843; *Harris v. Hooper*, No. 04–10–00378–CV, 2011 WL 4389908, at *2 (Tex. App.—San Antonio 2011, no pet.) (mem. op.); *Pyles,* 2007 WL 4462738, at *2 n.6; *CMM Grain Co.,* 991 S.W.2d at 439–40.

Here, the trial court held a hearing on Appellants' Plea in Abatement and Motion to Dismiss on October 8, 2014.[82] As the movants, Appellants bore the burden to prove the need for joining the allegedly indispensable parties. *United States v. Rutherford Oil Corp.,* CIV.A. G-08-0231, 2009 WL 1351794, at *2 (S.D.

---

[81]    *See supra*, Section I(B)(2).
[82]    CR9 (docket sheet, reflecting hearing), 157–58 (Order denying Appellants' Plea in Abatement).

Tex. May 13, 2009) ("The moving defendant has the burden of showing that a party must be joined for just adjudication."). However, Appellants have not provided a transcript of this hearing, nor any evidence regarding the exhibits and arguments offered. On this inadequate record, it is impossible to determine what evidence the parties offered regarding the necessity or infeasibility of the remaining mineral interest owners.

Nevertheless, attempting to take advantage of their own error, Appellants now argue that the evidence fails to support the trial court's ruling.[83] These inadequacies must be construed in favor of the Garzas, and the Court must assume that the missing evidence supported the trial court's decision to deny the Plea in Abatement. *Pyles,* 2007 WL 4462738, at *2 n.6; *CMM Grain Co.*, 991 S.W.2d at 439–40. Thus, once again, Appellants' failure to provide an adequate record requires the Court to overrule their issue.

## B. The Plea was untimely.

Moreover, even if the appellate record were sufficient to enable review, Appellants did not timely preserve the issue.

A plea in abatement must be raised in a timely manner or it is waived. *Bluebonnet,* 618 S.W.2d at 84 (noting that Texas law aligns with the "numerous federal cases[,] . . . cases from other jurisdictions," and "the majority trend in this

---

[83]     Appellants' Brief at 32–37.

country . . . to require that dilatory pleas be timely raised or they are waived"). "[A] court may examine the equities of the situation in deciding whether a plea in abatement is timely filed," and will consider a plea untimely if the party delays filing or actively participates in the litigation while aware of the facts supporting a plea in abatement. *Howell v. Mauzy*, 899 S.W.2d 690, 698 (Tex. App.—Austin 1994, writ denied) (holding plea in abatement untimely where party delayed several months with awareness of the facts supporting a plea in abatement); *Bluebonnet*, 618 S.W.2d at 84 (holding plea in abatement untimely where party delayed for several years).

For example, in *Bluebonnet Farms, Inc. v. Gibraltar Sav. Ass'n*, Bluebonnet Farms sued Gibraltar in 1975 for breaching an agreement to loan Bluebonnet $1.5 million for real estate development. 618 S.W.2d at 82. Gibraltar participated in the suit for four years before amending its answer to allege that Bluebonnet lacked the capacity to sue. *Id.* Gibraltar then filed a motion for summary judgment on the capacity issue, arguing that Bluebonnet could not correct the problem because the statute of limitations had expired. *Id.* The trial court granted summary judgment, but the Houston Court of Appeals reversed, holding that Gibraltar had not timely asserted Bluebonnet's capacity. *Id.*

The court noted that Gibraltar was actively engaged in the suit for four years without mentioning the capacity issue, and had no reason for its delay other than

that "its defense of limitations would not be good if it had apprised appellant of this complaint earlier." *Id.* at 84. "The Texas Rules of Civil Procedure, (including the special purpose of a plea in abatement) are designed to aid the speedy disposition of litigation on its merits," and "Texas courts have . . . denied the filing of a plea in abatement where it was not timely filed or where it would work an injustice to the plaintiff by forever barring him from a suit on the merits." *Id.* at 83–84. Gibraltar's delay thus waived its complaint regarding capacity. *Id.* at 84.

Here, Appellants filed their Plea in Abatement more than eight years after the Garzas' initial bill of review.[84] In the motion, Appellants claimed that there were indispensable defendants who had not been added to the case.[85] By the time the plea was filed however, the statute of limitations barred the Garzas from joining the omitted defendants.[86] Appellants thus attempted to use the same tactic as Gibraltar, participating in the suit for years before filing a dilatory plea so that the plaintiff would be unable to correct the alleged error due to the statute of limitations. *See Bluebonnet*, 618 S.W.2d at 83–84.

In fact, Appellants' delay and waiver were even more egregious than that of Gibraltar. Appellants waited twice as long as Gibraltar to file their Plea in Abatement—eight years rather than four—and delayed another eleven months after

---

[84]     CR23 (Original Petition for Bill of Review, filed October 26, 2005), 85 (Plea in Abatement or Alternatively, Motion to Dismiss for Misjoinder, filed November 7, 2013).
[85]     CR85.
[86]     CR147–56 (Garzas' response to Appellants' Plea); *see also* CR142 (Appellants' assertion of statute of limitations).

36

filing the Plea before seeking a ruling.[87] By the time Appellants finally secured a ruling regarding abatement, the parties were only weeks away from trial.[88] Thus, as in *Bluebonnet*, Appellants' delay waived the issue.

### C. The Plea was unverified.

Not only was Appellants' Plea in Abatement untimely, but it was unverified. Texas Rule of Civil Procedure 93(4) requires a plea in abatement to be *verified* in order to preserve a party's objection to a defect of the parties. TEX. R. CIV. P. 93(4). "The failure to verify a pleading required to be verified under Rule 93 generally waives any complaint that the trial court ruled adversely to the plea." *S. County Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 461 (Tex. App.—Corpus Christi 2000, no pet.); *see also Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex. 1988) (party waived right to complain regarding lack of capacity by failing to file a verified denial under Rule 93(2)). Here, as discussed above, Appellants filed an original Plea in Abatement eight years after the cause was filed, followed by an Amended Plea in Abatement six months later.[89] But neither motion was verified.[90] Thus, Appellants failed to preserve the issue for appeal. TEX. R. CIV. P. 93(4); *S. County Mut. Ins. Co.*, 19 S.W.3d at 461.

---

[87] CR127 (First Amended Plea in Abatement, filed April 29, 2014), CR157 (Order, signed on October 9, 2014).

[88] CR157 (Order, signed on October 9, 2014), 195 (stating that bench trial began on November 12, 2014).

[89] CR85–89 (Plea in Abatement, unverified), 127–37 (First Amended Plea in Abatement, unverified).

[90] *Id*.

**D.  Appellants did not and have not carried their burden to show that there were "indispensable" defendants.**

Even if Appellants had filed a timely, verified plea in abatement and provided an adequate appellate record for review, the trial court did not abuse its discretion by proceeding without the omitted defendants.

In 1971, the Texas Supreme Court revised Rule 39 of the Texas Rules of Civil Procedure to "lessen the numbers of categories of indispensable parties." *Cooper v. Tex. Gulf Indus., Inc.,* 513 S.W.2d 200, 203–04 (Tex. 1974); *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 832 (Tex. App.—Amarillo 1993, writ denied). Thus, parties who qualify for joinder under Rule 39(a) are not necessarily indispensable. *See, e.g., Longoria v. Exxon Mobil Corp.,* No. 04-15-00536-CV, 2016 WL 4013793, at *3 (Tex. App.—San Antonio July 27, 2016, pet. filed) (mem. op.). In fact, "[u]nder the provisions of our present Rule 39 it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined." *Pirtle*, 629 S.W.2d at 920 (quoting *Cooper*).

The emphasis of Rule 39 is on pragmatism and practicality. *McCarthy v. George,* 618 S.W.2d 762, 763 (Tex. 1981); *Cooper,* 513 S.W.2d at 204. Thus, as the movants, Appellants had the burden to prove that the absent defendants were *indispensable* parties without whom the trial court could not proceed. *See Flowers v. Steelcraft Corp.,* 406 S.W.2d 199 (Tex. 1966)*; In re Graybar Elec. Co., Inc.,*

No. 13-08-00073-CV, 2008 WL 3970865, at *8 (Tex. App.—Corpus Christi Aug. 26, 2008, orig. proceeding) (mem. op.) ("The movant has the burden of proof to establish the allegations in his motion to abate"). Specifically, Appellants were required to offer evidence on the four factors outlined in Texas Rule of Civil Procedure 39(b): "first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder." TEX. R. CIV. P. 39(b). The trial court must then weigh these factors to determine if it could continue with the present parties "in equity and good conscience." TEX. R. CIV. P. 39(b).

"[T]he trial court has broad discretion under the rules of civil procedure in questions regarding the joinder of parties." *Hedley Feedlot,* 855 S.W.2d at 833. Appellants, therefore, must not only conclusively demonstrate the Rule 39(b) factors on appeal, but must show that the trial court abused its discretion to such an extent that the judgment between the parties should be thrown away simply for failing to "settle the whole dispute." *Cooper,* 513 S.W.2d at 203–04; *see also Pirtle,* 629 S.W.2d at 920 ("[P]arties who participate in the trial without complaint will not be heard to complain at the appellate stage when "there is reason not to

throw away a judgment just because it did not theoretically settle the whole controversy."); *Campbell v. Jefferson,* 453 S.W.2d 336, 339 (Tex. Civ. App.—Tyler 1970, writ dism'd) ("Complete relief between the parties could be and was had in the cause of action.").

Appellants have not even attempted to carry this burden. It is undisputed that not all owners of mineral interests in Share 13 were joined in the suit.[91] Moreover, it is undisputed that the absent defendants qualified as "persons to be joined if feasible" under Rule 39(a) of the Texas Civil Practice and Remedies Code.[92] However, by the time Appellants filed their Plea in Abatement in 2013, joinder of the absent defendants was barred by the statute of limitations and thus infeasible.[93] Though Appellants feign ignorance regarding why the potential defendants were not joined, the infeasibility of joining such parties is noted throughout the record—including in the Garzas' response to Appellants' Plea in Abatement.[94]

Appellants further did not establish that the absent mineral interest holders were *indispensable* to the judgment. In fact, there is no evidence that Appellants ever addressed or offered evidence regarding the Rule 39(b) factors at all in

---

[91] *See, e.g.,* CR127–31, 147–55 (Plea in Abatement and response, both acknowledging that some owners of mineral interests are not party to the suit).

[92] CR153.

[93] CR153.

[94] Appellants' Brief at 37 ("For whatever reason, the Appellees just did not do it."); CR153.

presenting the issue to the trial court.[95] Neither Appellants' Plea in Abatement nor their Brief on appeal cite or address the factors in Rule 39(b).[96]

Rather, Appellants claim there is an alleged mandatory rule regarding the joinder of mineral interest owners, citing the word "shall" in Rule 39(a) and the San Antonio Court of Appeals' opinion in *Longoria v. Exxon Mobil Corp.*[97] 255 S.W.3d 174 (Tex. App.–San Antonio 2008, pet. denied). In reality, the *Longoria* court explicitly rejected Appellants' proposed mandatory rule, stating:

> The trial court has broad discretion in deciding matters of joinder of parties. . . . . **Although the rule [*i.e.,* Rule 39(a)] provides for joinder in mandatory terms, "there is no arbitrary standard or precise formula for determining whether a particular person falls within its provision.** . . . If a person required to be joined under Rule 39(a) cannot be joined, the trial court must decide "whether in equity and in good conscience the action should proceed among the parties before it, or should be dismissed" by considering the factors listed in Rule 39(b).

*Id.* at 179–80 (emphasis added);[98] *see also, e.g., Ernst v. Banker's Servs. Group, Inc.,* No. 05-98-00496-CV, 2001 WL 1256524, at *2 (Tex. App.—Dallas Oct. 22,

---

[95] CR127–30 (Appellants' First Amended Plea in Abatement, discussing only Rule 39(a) and emphasizing the word "shall" without addressing the Rule 39(b) factors).

[96] *See, generally,* Appellants' Brief at 32–37 (citing and quoting only Rule 39(a), and claiming that the phrase "shall be joined" makes joinder mandatory); *see also* CR127–30 (same).

[97] *Id.*

[98] The facts of *Longoria* also significantly differ from the case at hand. Here, the trial court did not abate the case or direct the Garzas to add the absent parties. In *Longoria,* the Longorias were given six months to add the omitted parties but chose not to do so. *Longoria,* 255 S.W.3d at 184. Additionally, the Garzas demonstrated that joinder of the absent parties was infeasible, triggering the analysis under Rule 39(b). CR121–25, 157–58. Such analysis was never triggered in *Longoria. Longoria,* 255 S.W.3d at 184. Even more importantly, the trial court in *Longoria*

2001, pet. denied) (mem. op., not designated for publication) (where plaintiff fraudulently transferred remainder interest in real property to trusts and such trusts were not added as defendants prior to statute of limitations, the trial court properly adjudicated the dispute before it rather than dismissing under Rule 39); *Tex. Oil & Gas Corp. v. Ostrom,* 638 S.W.2d 231, 235 (Tex. App.—Tyler 1982, writ ref'd n.r.e.) (recognizing that joining the lessors and royalty-interest interests owners would be wise, but holding that "we do not conclude that the absence of the lessors and royalty interest holders deprived the trial court of jurisdiction to adjudicate the dispute between the parties before it"). The primary emphasis in *Longoria* was thus on the trial court's discretion, not the allegedly per se nature of joinder. *Compare Longoria,* 255 S.W.3d at 179–80, *with* Appellants' Brief at 32–37.

The Eastland Court of Appeals reiterated the wide latitude afforded trial courts in matters of joinder in a parallel case: *Sabre Oil & Gas Corp. v. Gibson.* 72 S.W.3d 812 (Tex. App.—Eastland 2002, pet. denied). In 1957, the Gibsons—along with numerous other landowners—entered into a mineral lease with Sabre covering 38 tracts of land. *Id.* at 814. In 1997, Sabre drilled a well on the Gibson's land and filed a Designation of Unit pooling the land with other tracts. *Id.* The Gibsons sued, claiming that Sabre's lease had terminated. *Id.* Sabre filed a plea in abatement, claiming that the other royalty owners pooled with the Gibsons' tract

exercised its discretion to *grant* rather than deny the plea in abatement. *Id.* at 183. Here, the trial court exercised its discretion by denying Appellants' Plea in Abatement. CR157–58.

42

were indispensable. *Id.* at 815. The trial court denied the motion. *Id.* On appeal, Sabre challenged the trial court's denial of its plea in abatement. *Id.* at 815.

The Eastland Court of Appeals however, explicitly rejected the per-se rule that "all royalty owners are necessary parties pursuant to Texas Rule of Civil Procedure 39." *Id.* at 815. The court noted that such rule existed only prior to the enactment of the 1971 changes to Rule 39, and recognized that "Rule 39(a) no longer speaks of 'necessary' and 'indispensable' parties, and Texas courts have begun to discard these terms." *Id.* at 815–16. The Eastland Court then affirmed the trial court's exercise of discretion in denying the plea in abatement, holding:

> The trial court was able to provide the requested relief without joining the other royalty owners. Although they had an interest in that their share of the production from the pooled unit would be affected, presence of the other royalty owners was not necessary to determine whether Sabre pooled in bad faith and breached the terms of the lease.

*Id.* at 816.

Similarly here, the trial court was able to provide the requested relief without the absent mineral interest owners.[99] Appellants provided no evidence to establish that the absent mineral interest holders were indispensable to the suit under the Rule 39(b) factors.[100] Thus, even if Appellants had preserved the issue and

---

[99] CR195–97.
[100] *See, generally,* Appellants' Brief at 32–37 (citing and quoting only Rule 39(a), and claiming that the phrase "shall be joined" makes joinder mandatory); *see also* CR127–30 (same).

provided a sufficient appellate record for review, the trial court acted within its discretion in denying Appellants' Plea in Abatement.

## III. The judgment against the estates and trust is valid.

Appellants next challenge the validity of the judgment against the estates of Vicente Saenz, Hilaria Hernandez and Olivia Salinas Perez and the Eduardo Saenz Children's Revocable Trust.[101] However, the estates waived this issue by participating in the judgment and appeal. Moreover, Appellants have, yet again, failed to provide an adequate record for review.

### A. The record shows that the estates and trust participated in the judgment and appeal.

The Garzas do not dispute that Vicente Saenz, Hilaria Hernandez and Olivia Salinas Perez died prior to trial, that suggestions of death were filed, and that the clerk should have issued a scire facias to join the administrators of the relevant estates. *See* TEX. R. CIV. P. 152. Nor do the Garzas deny that their petition names the Eduardo Saenz Children's Revocable Trust, and the Estates of Francisca Vasquez, Eduardo Saenz, and Librada O. Salinas as defendants, rather than the administrators or legal representatives. However, if an estate or trust is represented at or otherwise participates in the trial, the judgment against the estate or trust is nonetheless valid. *Werner v. Colwell*, 909 S.W.2d 866, 870 (Tex. 1995) (reiterating the rule that when a trust is named as the defendant rather than the relevant trustee,

---

101     Appellants' Brief at 37–38.

the trust waives the issue by appearing in the case); *Bernstein v. Portland Sav. & Loan Ass'n,* 850 S.W.2d 694, 699 (Tex. App.—Corpus Christi 1993, writ denied), *disapproved of on other grounds by Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex. 2000).

In *Bernstein v. Portland Sav. & Loan Ass'n,* Portland Savings and Loan Association sued Sidney and Zayle Bernstein in 1982 for fraud, conversion, and conspiracy. 850 S.W.2d at 697. Defendant Sidney Bernstein died in 1985, while the suit was still pending. *Id.* at 699. As here, Sidney's personal representative was never substituted or served with a scire facias. *Id.* A jury then found Sidney liable, and the trial court entered judgment against Sidney's estate. *Id.* The estate appealed, asserting the same argument that Appellants assert: that the judgment was void because an estate is not a legal entity, and scire facias never issued. *Compare id.* at 699–700, *with* Appellants' Brief at 37–38. However, Sidney Bernstein's personal representative participated in the trial, filing motions and amended answers via counsel. *Bernstein,* 850 S.W.2d at 700. The estate even appeared and announced ready for trial. *Id.* The court of appeals thus held that "the judgment against the personal representative is valid, even though it was incorrectly entered against the estate" because the estate "had notice of and participated sufficiently in the case." *Id.* at 700.

45

Here, the estates and trust were all represented at trial. From the beginning, Eduardo Saenz Children's Revocable Trust, and the estates of Francisca Vasquez, Eduardo Saenz, and Librada O. Salinas filed a response to the Garzas' Bill of Review by and through Richard Schnell.[102] The estates and trust did not file a special appearance, and Schnell continued to represent the estates and trust throughout the proceedings.[103] In fact, Schnell continues to represent the estates and trust even in this appeal.[104]

Similarly, regarding the estates of Vicente Saenz, Hilaria Hernandez and Olivia Salinas Perez, Appellants filed a suggestion of death for all three individuals on November 6, 2013.[105] No motion to withdraw as counsel for these parties was filed after this date. Appellants' own Plea in Abatement—filed approximately six months later—explicitly stated that Vicente Saenz's and Hilaria Hernandez's interests were still represented by Richard D. Schell.[106] Appellants' Notice of Appeal then confirmed that Schnell not only represented Olivia Salinas Perez

---

[102]  CR53 (reflecting Schnell as the attorney for the Estate of Francisca Vasquez, the Estate of Eduardo Saenz, the Estate of Librada O. Salinas, and the Eduardo Saenz Children's Revocable Trust).

[103]  *See generally* CR.

[104]  CR212 (Notice of Appeal, filed by Richard Schnell on behalf of the Estate of Francisca Vasquez, Estate of Eduardo Saenz, Estate of Librada Salinas, and the Eduardo Saenz Children's Revocable Trust).

[105]  CR82.

[106]  CR132–137 (chart attached to Appellants' First Amended Plea in Abatement on April 29, 2014, reflecting that Sanez and Hernandez were represented by Schell).

46

throughout the trial, but remains her counsel in this appeal.[107] Since all estates and the relevant trust were represented and participated in the trial court proceedings, the judgment is valid.

## B. Regardless, the record is inadequate to reverse the judgment against Olivia Salinas Perez.

Even if the record did not indicate sufficient participation in the trial court proceedings, the inadequate state of the record impedes Appellants' assertion of error. Olivia Salinas Perez died on May 9, 2003, prior to the dismissal of the original cause number.[108] But Appellants have failed to provide a copy of the record from the original cause number.[109] As such, the Court must construe the missing record in the Garzas' favor, and assume that scire facias was issued in the original cause. *Imagine Auto. Group v. Boardwalk Motor Cars, Ltd.,* 430 S.W.3d 620, 632 (Tex. App.—Dallas 2014, pet. denied) ("When confronted with an incomplete record, we presume the omitted portions are relevant to the appeal and the evidence contained within the omitted portions of the record support the trial court's judgment."); *McFarland v. Szakalun*, 809 S.W.2d 760, 764 (Tex. App.— Houston [14th Dist.] 1991, writ denied) ("When the record is incomplete, we must

---

[107]     *See* CR198 (Request for Findings of Fact and Conclusions of Law filed on Perez's behalf), 201 (Notice of Past Due Findings filed on Perez's behalf), 212 (Notice of Appeal taken on Perez's behalf), 215 (request for Reporter's Record filed on Perez's behalf), 218 (Request for Preparation of Clerk's Record filed on Perez's behalf).

[108]     CR29 (original cause dismissed on May 12, 2004), 42 (Perez died May 9, 2003), 82 (same).

[109]     *See supra,* Section I(B)(2).

47

assume that the portion omitted supports the correctness of the trial court's judgment."). Thus, the judgment against Olivia Salinas Perez must be affirmed.

## IV. The damages award is valid.

Appellants next assert numerous challenges regarding the damages awarded by the trial court. Appellants claim that, (a) actual damages are not available for breach of the warranty of title; (b) there is no evidence of each Appellant's interest in the relevant property; (c) defendants cannot be held jointly and severally liable without specific findings of individual liability greater than fifty percent; and (d) the expert testimony supporting the damages award is unreliable.[110] These arguments are erroneous.

### A. Appellants have not challenged all separate and independent grounds supporting the damages award.

Appellants first argue that Texas law "limits the damages available to a plaintiff who prevails on a cause of action for breach of warranty of title."[111] However, the Garzas asserted four separate causes of action against Appellants: breach of warranty of title, breach of covenant against encumbrances, breach of implied covenants, and trespass to try title.[112] The trial court found Appellants

---

[110] Appellants' Brief at 17–24 (regarding damages available for breach of warranty of title), 40–41 (regarding expert testimony), 41–44 (joint and several liability).
[111] Appellants' Brief at 17–24. To clarify, when land is conveyed for consideration other than money, damages for breach of the warranty of title are limited to the value of the land at the time of the conveyance. *Compare Ledbetter v. Howard*, 395 S.W.2d 951, 953 (Tex. Civ. App.—Waco 1965, no writ), *with* Appellants' Brief at 17–19.
[112] *See* CR94–108, 196.

liable for all four causes of action; the damages award was not narrowly attributed—by the evidence or the trial court's findings—to a solitary claim.[113] Thus, there are four separate and independent grounds supporting the trial court's award of damages.[114]

A trial court's judgment must be affirmed if it can be upheld on any legal basis supported by the evidence. *Highland Credit Opportunities CDO, L.P. v. UBS AG,* 451 S.W.3d 508, 519 (Tex. App.—Dallas 2014, no pet.) (holding "the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence; incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory"); *Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.,* 120 S.W.3d 878, 880–81 (Tex. App.—Fort Worth 2003, pet. denied) ("[I]t is our duty to uphold the judgment on any theory of law applicable to the case."). Thus, "[w]hen a separate and independent ground that supports a judgment is not challenged on appeal, the appellate court must affirm." *Bechtel Corp. v. City of San Antonio*, No. 04-04-00910-CV, 2006 WL 228689, at *3 (Tex. App.—San Antonio Feb. 1, 2006, no pet.) (mem. op.); *Nichols v. Byrne,* No. 13-97-456-CV, 1999 WL 58570, at *1 (Tex. App.—Corpus Christi Jan. 28, 1999, no pet.) (mem. op.) (same); *see also Nobility Homes,* 557 S.W.2d at 83; *San Antonio Press,* 852 S.W.2d at 65 ("If the

---

113    CR195–97, 223–26.
114    CR195–97, 223–26.

rule were otherwise, an appellant could avoid the adverse effect of a separate and independent basis for the judgment by ignoring it and leaving it unchallenged.").

Here, Appellants attack only a single ground, claiming that the damages awarded in a breach of warranty of title action may be no more than each defendants' proportional share of the compensation paid by the grantee.[115] Appellants do not claim that this purported limit applies to damages awarded for a breach of the covenant against encumbrances, breach of implied covenants, or trespass to try title.[116] In fact, Appellants do not even acknowledge these separate and independent bases for the damages award.[117] The Court is thus required to affirm the judgment even if Appellants' challenges to the damages for breach of warranty of title had merit. *Gillett v. Achterberg*, 325 S.W.2d 384, 385 (Tex. 1959).

## B. The Garzas are entitled to recover damages for trespass to try title and mineral trespass.

Even if Appellants had addressed all the separate and independent bases for the judgment, their challenge would nonetheless lack merit. The Garzas are entitled to recover damages.

"The plaintiff in a trespass to try title suit, by pleading facts showing it is entitled, may recover rents and profits or damages incurred from loss of use."

---

[115] Appellants' Brief at 17–24.
[116] *Id.*
[117] *Id.*

50

*Victory Energy Corp. v. Oz Gas Corp.,* 461 S.W.3d 159, 177 (Tex. App.—El Paso 2014, pet. denied); *Musquiz v. Marroquin,* 124 S.W.3d 906, 912 (Tex. App.—Corpus Christi 2004, pet. denied); *United Sav. Ass'n of Tex. v. Villanueva,* 878 S.W.2d 619, 623 (Tex. App.—Corpus Christi 1994, no writ); *see also* TEX. R. CIV. P. 783(f) (a petition for trespass to try title may include, "[i]f rents and profits or damages are claimed, such facts as show the plaintiff to be entitled thereto and the amount thereof"). Furthermore, the Garzas expressly pleaded a mineral trespass, which the trial court found occurred, and this valid legal theory would also support the damages. *See Victory Energy Corp.,* 461 S.W.3d at 177.[118]

Here, Richard Cortez offered extensive expert testimony regarding "plaintiffs' share of the royalties for the period of ownership of this mineral interest," which totaled more than $1.578 million in light of the Litigation Participation Agreement.[119] Although Appellants claim there are limitations on the damages for a breach of warranty of title action, they have offered no reason why the Garzas are not entitled to recover actual damages in the form of lost royalty payments for Appellants' trespass to try title or mineral trespass.[120] Thus, even if Appellants had attacked each independent bases supporting the judgment, their challenge would fail. And, a valid legal theory—mineral trespass—would support

---

[118]  CR104 (pleading trespass), 225 (Finding of Fact #8).
[119]  3RR77–79; 5RR Ex. PX-19–22.
[120]  *See, e.g.,* Appellants' Brief at 17–24.

51

the judgment anyway. *Highland Credit Opportunities CDO, L.P.,* 451 S.W.3d at 519.

## C. There is legally sufficient evidence showing Appellants' interest in Share 13.

Amazingly, Appellants next claim there is "not a shred of evidence . . . that showed who the Appellants were, what they owned, what they inherited, where they lived, [or] what their relationship was to Eleuterio Salinas."[121] This statement could not be farther from the truth. Not only was there ample evidence regarding Appellants' identify, property ownership, and relationship to Eleuterio Salinas, but much of it was proffered by Appellants themselves.

Even prior to the trial, Appellants judicially admitted on numerous occasions that they were the predecessors in interest to Eleuterio Salinas; not "names out of [a] phone book," as they now allege.[122] Appellants' Plea in Abatement—a plea they still champion in this appeal—states:

> Defendants would show the court that, **in addition to the named defendants in this suit,** there are many other persons who are record title owners of surface or mineral interests in Share 13.[123]

---

[121] Appellants' Brief at 43–44.

[122] *Compare, e.g.,* CR129, 3RR41:20–22, 45:12–25; 5RR Ex. DX-8, *with* Appellants' Brief at 43–44 ("[N]ot a shred of evidence was introduced that showed who the Appellants were. . . . They could have just as easily picked names out of [the] phone book.").

[123] CR129 (First Amended Plea in Abatement) (emphasis added); *see also* CR87 (initial Plea in Abatement, stating "Defendants would show the court that, in addition to the named defendants in this suit, the following persons are record title owners of the mineral interests that Plaintiffs claim to own in this suit.")

52

At trial, Margarito Salinas—a defendant and Appellant, *called to the stand by the Appellants*—testified on direct examination that "Eleuterio Salinas was my grandfather," and that Eleuterio died without a will, leaving his portion of Share 13 to his children.[124] Appellants then offered and admitted into evidence an affidavit of heirship, signed by Margarito Salinas and tracing the decedents of Eleuterio Salinas in detail.[125]

Margarito proceeded to testify regarding Eleuterio Salinas' descendants, their families, and their interests in Share 13, confirming that "[t]he Salinas family has property in Share 13."[126] Later, Appellants agreed to the admission of a map of Share 13, and Appellants' counsel explained to the trial court that "all of these people on the right side of the courtroom, along with Mr. [Margarito] Salinas, own the remainder of Share 13" and are "descendants of Eleuterio Salinas."[127] When the Garzas offered a second map showing Appellants' family cemetery and residences, located on Share 13, Appellants did not object.[128] Then, in their closing argument, Appellants reiterated that the named defendants were "owners of the property in

---

[124] 3RR41:20–22 (stating that Salinas was his grandfather), 45:12–25 (stating that Salinas died without a will as a single man, leaving the property to pass to his children); 5RR Ex. DX-8.

[125] 5RR Ex. DX-8.

[126] 3RR53:24–54:24 (testifying that the Salinas family has about 451 acres from Eleuterio, divided among the heirs as family members passed away), 65:7–10, 66:17–20 (testifying that he does not know of any Salinas family members who have conveyed the property outside the family).

[127] 4RR26:16–20.

[128] 4RR27:11–28:16; 5RR Ex. PX-27.

53

Share 13 that at one time belonged to Eleuterio Salinas."[129] Appellants' assertion that there is "no evidence" of their identity, property ownership, or relation to Eleuterio Salinas is thus absurd. Not only is there legally sufficient evidence to show the Appellants' identity, property ownership, and relationship to Eleuterio Salinas, but much of the evidence was offered by Appellants themselves.

### D. Appellants were properly held jointly and severally liable for the damages.

Next, Appellants challenge the trial court's imposition of joint and several liability.[130] Specifically, Appellants assert that joint and several liability may only be imposed under Chapter 33 of the Texas Civil Practice and Remedies Code, and claim that the Garzas did not establish each Appellant's liability on an individual basis, nor prove that a singular Appellant was more than fifty percent liable. Appellants fail to recognize however, that joint and several liability may be imposed on joint parties to a trespass.

The trial court did not err by holding Appellants jointly and severally liable. Rather, "[t]he imposition of joint and several liability turns upon the actions of the joint-trespassers as parties to the trespass;" not the extent of their individual violation. *Victory Energy,* 461 S.W.3d at 180–81; *see also Walker v. Read,* 59 Tex. 187, 191 (Tex. 1883); *Plebian Partners, Ltd. v. McCorkle*, No. 9-98-320 CV, 1999

---

[129]    CR184.
[130]    Appellants' Brief at 41–44.

WL 199641, at *3 (Tex. App.—Beaumont Apr. 1, 1999, pet. denied) (mem. op., not designated for publication) (quoting and applying *Parker v. Kangerga* to hold parties to trespass jointly and severally liable); *Hexamer v. Topographic Land Surveyors*, No. 05-97-00108-CV, 1999 WL 114390, at *2 (Tex. App.—Dallas Mar. 4, 1999, no pet.) (mem. op., not designated for publication) ("Liability for trespass is not dependent upon personal participation and one who causes another to trespass by aiding, assisting, advising or encouraging the trespass is equally liable for the trespass."); *Parker v. Kangerga*, 482 S.W.2d 43, 47 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.); 70 Tex. Jur. 3d *Trespass to Realty* § 12 (2016) ("Liability for trespass is not dependent upon personal participation."); 70 Tex. Jur. 3d *Trespass to Realty* § 14 (2016) ("The imposition of joint and several liability for a trespass turns upon the actions of the joint-trespassers as parties to the trespass, and personal participation is not required.").

For example, in *Victory Energy Corp. v. Oz Gas Corporation,* the Oz Gas Corporation filed a trespass to try title suit against Victory Energy Corporation, SmartGas, LLC, and HCP Investments, LLC, among others. 461 S.W.3d at 159–69. Oz held a leasehold interest in 160 acres of land, and claimed that the defendants trespassed by operating wells on the property. *Id.* at 168–69. However, a third party had purported to convey an interest to the defendants. *Id.* The trial court entered summary judgment regarding the defendants' liability, then held a

55

bench trial on damages. *Id.* at 169. The defendants were held jointly and severally liable for the actual damages resulting from their trespass. *Id.* On appeal, the defendants challenged the imposition of joint and several liability, claiming that the trial court erred by failing to impose liability specific to each party or well. *Id.* at 180.

The El Paso Court of Appeals rejected this argument, reiterating the century-old rule that "all who aid or abet the commission of a trespass are liable jointly or severally." *Id.* (citing *Cunningham v. Coyle,* 1884 WL 8399, at *1 (Tex. Ct. App. 1884)). The court thus held:

> The imposition of joint and several liability turns upon the actions of the joint-trespassers as parties to the trespass. Thus, the legal or factual insufficiency of the evidence showing whether appellants actually trespassed as to both wells or benefitted is not directly relevant to the issue of whether the damages may be assessed jointly and severally given that personal participation is not required.

*Victory Energy,* 461 S.W.3d at 180–81.

Similarly, here Appellants were parties to the trespass. Margarito Salinas—a defendant and appellant—testified regarding the operation of wells on Share 13, confirming that Eleuterio Salinas' decedents executed and profited from the oil and gas leases on Share 13.[131] The Garzas presented detailed production data from the U.S. Data Library—a resource that aggregates information from the Texas

---

[131]    3RR67:7–68:14; 5RR Ex. DX-6.

Railroad Commission—regarding the producing wells on the Appellants' portion of Share 13.[132] Richard Cortez provided expert testimony, a report, and calculations regarding the production and royalties collected by the Appellants for oil and gas wells on Share 13.[133] The defendants offered no controverting data or expert testimony.[134]

As in *Victory Energy,* the trial court held all those who participated in the trespass—*i.e.,* all Appellants—jointly and severally liable.[135] Appellants were parties to trespass; specific findings regarding the extent of each trespasser's individual participation were not necessary. *Victory Energy,* 461 S.W.3d at 180–81. Thus, the trial court did not err in holding Appellants jointly and severally liable.

## E.     Appellants did not preserve their challenge to Cortez's foundational data.[136]

Finally, Appellants claim that the "expert testimony of Richard Cortez on damages was not reliable," "would not have survived a *Daubert* challenge," and

---

[132]     3RR75–76; 5RR Ex. PX-18–22.

[133]     5RR Ex. PX-18 (expert report, detailing production data, calculations, and profits), P-19–20 (production data for Salinas wells), P-21–22 (expert calculations regarding royalties, taxes, profit).

[134]     *See, generally,* 3RR105:15–106:5 (Cortez testifying that he was unaware of any other experts in the case).

[135]     CR195–97, 223–226.

[136]     The admission of expert testimony is reviewed for an abuse of discretion. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006).

57

"is no evidence of damages."[137] Specifically, Appellants criticize Cortez for relying on data provided to him by the Garzas "who got it from a website operated by a private company," while alleging that Cortez himself "had no prior experience with that website and did no investigation of how such data was obtained or whether it was reliable."[138] This is a challenge to the admissibility of Cortez's testimony based on his foundational data. *See, e.g., Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 409 (Tex. 1998) ("*Daubert*'s focus is on the trial court's discretion, when faced with an objection to scientific evidence, to admit or exclude such evidence before or during the trial."). This type of challenge must be properly objected to and preserved at trial, or it is waived. *Coastal Transport, Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004); *see also E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549 (Tex. 1996).

The Texas Supreme Court has held that, even in the context of no-evidence attacks on expert testimony, a *Daubert/Robinson* challenge to the reliability of the underlying data "must be timely made in order to allow the court to exercise its gatekeeper function." *Coastal Transport*, 136 S.W.3d at 229 (citing *Mar. Overseas,* 971 S.W.2d at 411); *see also Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706 (Tex. 1997). The Court explained:

137    Appellants' Brief at 40–41.
138    Appellants' Brief at 40; *see also* 4RR37:19-39:2 (Appellants' closing argument, in which counsel stated: "In terms of damages, the only evidence they have on damages is their expert witness, the mayor, Mayor Cortez, who did a great job in math but admitted to the Court that . . . all he did was rely on printouts from a website that were provided to him from the plaintiffs.").

> When the expert's underlying methodology is challenged, the court "necessarily looks beyond what the expert said" to evaluate the reliability of the expert's opinion. . . . **We therefore conclude that when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis.** However, when the challenge is restricted to the face of the record, for example, when expert testimony is speculative or conclusory on its face, then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility.

*Coastal Transport*, 136 S.W.3d at 229 (emphasis added) (internal citations omitted). Thus, the only no-evidence challenge to expert testimony that can be asserted for the first time on appeal is an attack on the evidence as conclusory or speculative on its face. *Id.*

Here however, Appellants have not and do not argue that Cortez's testimony was speculative, conclusory, or otherwise non-probative on its face.[139] Rather, Appellants attack Cortez's testimony only as to the foundational data upon which Cortez relied.[140] Yet, Appellants never filed a pretrial *Daubert* motion to strike Cortez's testimony, nor did they make an oral objection during trial.[141] Appellants cross-examined Cortez regarding the data he relied upon, but did not object to or

---

[139]    Appellants' Brief at 40–41.
[140]    *Id.*
[141]    *See, generally,* CR; 3RR72–105.

59

secure a ruling on the reliability of such testimony.[142] In fact, although Appellants condemn Cortez's use of information "provided to him by the Plaintiff who got it from a website operated by a private company," Appellants did not actually object to the admission of the allegedly unreliable website data as trial exhibits, nor did they object to the admission of Cortez's documented calculations made in reliance on such data.[143] Consequently, Appellants' challenge to Cortez's foundational data has been waived. *See* TEX. R. APP. P. 33.1.

This case is similar to *Maritime Overseas Corp. v. Ellis*. There, Maritime employee Richard Ellis was awarded $12.6 million in damages for overexposure to a roach pesticide that caused him neurological issues. *Mar. Overseas,* 971 S.W.2d at 404–05. Maritime appealed, complaining that there was no evidence to support Ellis's actual damages. *Id.* at 408. The Texas Supreme Court refused to analyze the reliability of Ellis's expert testimony. *Id.* at 411. Instead, the Court held that Maritime had waived the issue by not objecting to the reliability of Ellis's experts before or during trial. *Id.* at 410–11 (contrasting *Maritime* with *Merrell Dow,*

---

[142] 3RR76 ("Your Honor, we don't have any problems in admitting it as a summary of Mayor Cortez's testimony, but we're not—we're not agreeing to the truth of the matters stated in the report."), 3RR77:12 (Appellants did not object when the U.S. Data Library reports were admitted into evidence), 3RR79:12–80:25 (no objection when charts of Cortez's calculations of lost royalties based on the reports were admitted), 80–103 (Appellants' cross examination); 4RR37:19-39:2 (Appellants' closing argument, in which counsel stated "Mayor Cortez, who did a great job in math but admitted to the Court that . . . all he did was rely on printouts from a website that were provided to him from the plaintiffs.").

[143] Appellants' Brief at 40–41; 3RR77:12 (no objection when the U.S. Data Library reports were admitted into evidence), 3RR79:12–80:25 (no objection when charts of Cortez's calculations of lost royalties based on the reports were admitted).

where the appellant "objected to the Havners' scientific evidence at several junctures during the litigation," including filing numerous pretrial *Daubert* motions). Maritime could not "complain for the first time after the verdict that the testimony from Ellis's five experts does not support the judgment." *Maritime*, 971 S.W.2d at 411.

Appellants never filed a *Daubert* motion, never made formal objections on the record regarding the reliability of Cortez's expert opinion, and did not even object to the U.S. Data Library reports when they were admitted into evidence by the trial court.[144] Thus, Appellants' attack on the reliability of Cortez's foundational data is an attempt to bypass and undermine the "gate-keeper." Accordingly, this issue has been waived and must be overruled. *See* TEX. R. APP. P. 33.1.

## CONCLUSION AND PRAYER

Appellants assert a multiplicity of scattered arguments, none of which provide a legal basis for reversing the trial court's final judgment. Thus, for the reasons set forth above, Appellees respectfully request that this Court affirm the trial court's judgment, and grant any other relief to which they are entitled.

---

[144] 3RR77:12.

Respectfully submitted,

*/s/ Brandy Wingate Voss*
Brandy Wingate Voss
State Bar No. 24037046
Allegra Hill
State Bar No. 24075965
LAW OFFICE OF BRANDY WINGATE VOSS
820 E. Hackberry Ave.
McAllen, TX 78501
(956) 688-9033
(956) 331-2230 (fax)
brandy@brandyvosslaw.com
allegra@brandyvosslaw.com

*Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i), if applicable, because it contains 14,670 words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Brandy Wingate Voss*
Brandy Wingate Voss

# CERTIFICATE OF SERVICE

On December 29, 2016, in compliance with Texas Rule of Appellate Procedure 9.5, I served a copy of this petition for writ of mandamus by e-service, e-mail, facsimile, or mail to:

Richard D. Schell
LAW OFFICES OF RICHARD D. SCHELL
1801 S. 2nd Street, Suite 460
McAllen, Texas 78503
Fax: (956) 687-3329
Email: rick@rickschell.com

/s/ Brandy Wingate Voss
Brandy Wingate Voss